M.F.A. MUTUAL INSURANCE COMPANY, and Allstate Insurance Company, a corporation, Plaintiffs-Respondents,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Defendant-Appellant.

No. 12748.

Missouri Court of Appeals, Southern District, Division Three.

May 27, 1983.

Motion for Rehearing or to Transfer Denied June 17, 1983.

Application to Transfer Denied Aug 16, 1983.

R.A. Wegmann, Wegmann, Gasaway, Stewart, Schneider, Dickhaner, Tesreau &

Stoll, P.C., Hillsboro, for defendant-appellant.

Morton K. Lange, Cuba, for plaintiffs-respondents.

FLANIGAN, Judge.

Plaintiffs M.F.A. Mutual Insurance Company and Allstate Insurance Company filed this action against defendant American Family Mutual Insurance Company, seeking contribution from American Family to a $20,000 settlement which M.F.A. and Allstate previously made with Betty Miller. The "uninsured motorist" (UM) provisions of the respective policies issued by the three companies are the core of the dispute. M.F.A. and Allstate each had contributed $10,000 to the settlement. The limits of the UM coverage under the policies were: M.F.A., $10,000; Allstate, $20,000; American Family, $20,000. It was the theory of M.F.A. and Allstate that the M.F.A.-Allstate-American Family contributions to the $20,000 settlement should have been in the ratio of 1:2:2; that is, $4,000:$8,000:$8,000. On that theory M.F.A. sued for a $6,000 contribution from American Family and Allstate sued for a $2,000 contribution.

There was no significant factual dispute and each side filed a motion for summary judgment. The trial court sustained plaintiffs' motion and awarded M.F.A. $6,000 and Allstate $2,000. American Family appeals.[1]

On March 16, 1979, a Ford automobile occupied by three ladies was struck by a "hit-and-run" vehicle and caused to overturn, resulting in injuries to one of the occupants, Betty Miller. The Ford was driven by Faye Barnicle. Another passenger was Fern Cassidy, who owned the Ford.

The M.F.A. policy was on the Ford. Driver Barnicle had two Allstate policies which applied, respectively, to two vehicles which she owned. Injured passenger Miller had two American Family policies which applied, respectively, to two vehicles which she owned. Each of the five policies had

UM limits of $10,000 for injuries to one person. American Family, with commendable candor, concedes that the $20,000 settlement was a reasonable one.

It is American Family's position that the trial court erred in granting summary judgment for the plaintiffs, and in denying American Family's motion for summary judgment, because the "other insurance" provision of the American Family policy eliminated any duty on the part of American Family to contribute to the $20,000 settlement. M.F.A. and Allstate, on the other hand, take the position that the "other insurance" provision of the American Family policy is void because it "impairs the prescribed minimum coverage mandated by § 379.203,"[2] which deals generally with automobile liability insurance policies and requires certain coverage of the "uninsured motorist" variety.

M.F.A. and Allstate rely primarily upon *Midwest Mut. Ins. Co. v. Aetna Cas. & Sur. Co.*, 565 S.W.2d 711 (Mo.App.1978). For the reasons which follow, this court holds that American Family's position is sound and that neither the statute nor *Midwest* invalidates the "other insurance" provision of the American Family condition and that the provision freed American Family from any duty to contribute to the settlement.

All provisions of an insurance policy should be given effect and the policy must be reasonably construed "in light of the specific situation with which the parties are dealing." *M.F.A. Mut. Ins. Co. v. Dunlap*, 525 S.W.2d 766, 769 (Mo.App.1975). If the language of an insurance policy is in fact ambiguous, the interpretation which is most favorable to the insured must be adopted. That principle, however, does not authorize courts, under the guise of interpretation or construction, to alter or rewrite a policy and where there is no ambiguity and the policy provision is a valid one, the language of the contract must be enforced in accordance with its plain meaning. *Kis-*

---

1. The meticulous briefs of both sides are models of excellence.

2. Unless otherwise indicated, all references to statutes are to RSMo 1978, V.A.M.S.

*ling v. M.F.A. Mut. Ins. Co.,* 399 S.W.2d 245, 248 (Mo.App.1966).

Parties to an insurance contract are free to place such limitations on the insurer's liability as they may agree upon so long as those limitations do not violate a statute or public policy. *Famuliner v. Farmers Ins. Co.,* 619 S.W.2d 894, 897 (Mo. App.1981). "Unless otherwise controlled by statute . . . the insurer is free to impose its own terms, which would then control as to coverages in excess of those required by statute. If such coverage is not contained in the policy nor required by law, it may not be read into the obligations." Appleman, Ins. Law & Prac., Vol. 8C, § 5067.15, p. 16. Although statutes enter into and form a part of all contracts of insurance to which they are "pertinent and applicable," *Ward v. Allstate Ins. Co.,* 514 S.W.2d 576, 578[1] (Mo. banc 1974), only those statutes which are in fact "pertinent and applicable" are integrated into the contract. *Transport Ind. Co. v. Teter,* 575 S.W.2d 780, 787 (Mo. App.1979). "The fact that a policy contains a provision . . . that it shall be construed according to a . . . statute requiring insurance, does not convert the policy into a compulsory policy *where actually it was not required because the factual basis necessary to make the statute applicable did not exist.*" Couch on Insurance, 2d, Vol. 12A, § 45:702, p. 338. Because the case at bar deals with a factual situation not within the scope of the 1979 version of § 379.203, the statute has no application.

American Family concedes that the collision was caused solely by the hit-and-run vehicle. It is of paramount significance, however, that there was neither proof nor claim that the hit-and-run vehicle was in fact an "uninsured motor vehicle" as that term was employed in the version of § 379.203 which was in effect on the date of the accident. In order to bring a hit-and-run vehicle under the *statute,* as it then existed,[3] the person claiming UM coverage had to "meet the burden of proof that the

other vehicle is uninsured." *Ward v. All-state Ins. Co.,* 514 S.W.2d 576, 578[2] (Mo. banc 1974); *Opitz v. Collandt,* 592 S.W.2d 870, 872 (Mo.App.1979). It is true that the M.F.A., Allstate and American Family policies contained provisions with respect to "hit-and-run" motorists but in so doing they went beyond the requirements of the 1979 version of § 379.203.

Sec. 379.203 is an "uninsured motor vehicle" statute as distinguished from an "uninsured motorist" statute. *Harrison v. M.F.A. Mut. Ins. Co.,* 607 S.W.2d 137, 144 (Mo. banc 1980); *Hendrickson v. Cumpton,* 632 S.W.2d 512, 515 (Mo.App.1982).

The briefs of the parties discuss at length *Midwest Mut. Ins. Co. v. Aetna Cas. & Sur. Co.,* 565 S.W.2d 711 (Mo.App.1978). *Midwest* did not involve a hit-and-run vehicle. The opinion states that the injured person, Banks, collided with "an uninsured motorist." It is a reasonable, if not inescapable, inference that the incident in *Midwest* was within the scope of § 379.203 in that the motor vehicle was in fact uninsured. In that case two insurance companies, Midwest Mutual and Aetna, afforded UM coverage. Midwest settled with the insured Banks for $4,500 and sued Aetna for a 50 percent contribution. The companies disagreed on whether the "other insurance" clause in the Aetna policy provided only "excess" coverage or "pro rata" coverage. The court said, "The battleground the parties have chosen does not exist in Missouri because the provisions in Aetna's policy which purport to limit its obligation to Banks for uninsured motorist coverage do not exist. In short, Aetna's policies afforded a full $10,000 uninsured motorist coverage to Banks the same as the Midwest policy. Thus, the question is not whether Midwest is a primary carrier or whether Aetna is an excess carrier or Aetna's coverage is only pro rata with Midwest. By reason of the removal of the restrictions on uninsured motorist coverage, each policy involved here afforded

3. Sec. 379.203 was amended in 1982 to include provisions dealing with the "hit-and-run" situa-   tion.

Banks $10,000 in uninsured motorist coverage."

The court in *Midwest* found "persuasive" two Florida cases including *Sellers v. United States Fidelity & Guaranty Co.*, 185 So.2d 689 (Fla.1966). In *Sellers* the court dealt with an uninsured motorist statute which, said the court in *Midwest*, was "almost identical" to § 379.203, par. 4. The Florida court said, "There appears no latitude *in the statute* for an insurer limiting its liability through 'other insurance'; 'excess-escape' or 'pro rata' clause as attempted in the 'other insurance' provision." The *Sellers* ruling, adopted in *Midwest*, has been said to be consistent with "the great weight of authority." *Wescott v. Allstate Ins. Co.*, 397 A.2d 156, 169 (Maine 1979). (Citing authorities.) See 28 A.L.R.3d 551 (Uninsured motorist insurance: Validity and construction of "other insurance" provisions).

Although American Family challenges the soundness of the ruling in *Midwest*, and urges that it "should not be followed," it is sufficient to note that *Midwest* is distinguishable because it involved a factual situation within the scope of the statute and the case at bar involves one outside that scope. The statute does not invalidate the "other insurance" provision of the American Family policy.

The ruling in *Midwest* was that the "other insurance" provision, regardless of its type, was void because it conflicted with the coverage required by the statute. The court did not hold, at least expressly, that the mere presence of the provision was obnoxious to some broader "public policy," that is a policy beyond that expressed in the statute itself. Missouri courts have upheld "other insurance" provisions, in liability insurance situations, *State Farm Mut. Auto. Ins. Co. v. Western Cas. & Sur. Co.*, 477 S.W.2d 421 (Mo.1972), unless the two policies contained mutually repugnant clauses.

*State Farm Mut., Etc. v. Universal, Etc.*, 594 S.W.2d 950 (Mo.App.1980).

"It has been stated also that such provisions ['other insurance' provisions in uninsured motorist policies] are not against public policy, even though they may lead to the disappointment of innocent victims of uninsured motorists. This has been held whether such provisions are largely of a pro rata or excess character. And, of course, such a result is more likely to be reached where the victims have been fully compensated." Appleman, Ins. Law & Prac., Vol. 8C, § 5102, p. 466–468.

Other courts have held that where a hit-and-run vehicle is not within the scope of the uninsured motorist statute, the insurer may establish limits on the hit-and-run coverage which the policy, as distinguished from the statute, provides. *Taylor v. American Underwriters, Inc.*, 170 Ind.App. 148, 352 N.E.2d 86, 91 (1976); *Citizens Mutual Ins. Co. v. Jenks*, 37 Mich.App. 378, 194 N.W.2d 728, 731 (1971). In the latter case the court said, "To the extent that the hit-and-run provisions go beyond the insurance code they are to the advantage of [the insured]. And since those provisions are neither required nor prohibited by the insurance code, the parties to the insurance contract were free to limit or restrict them in any manner they saw fit."

This court holds that the other insurance provision of the American Family policy is valid and the issue now is whether its operative effect was to protect American Family from the contribution exacted from it by the judgment of the trial court.

The uninsured motorist section, which included the hit-and-run coverage, of each of the three insurance policies contained a provision dealing with "other insurance." Pertinent portions are set out marginally.[4]

---

4. M.F.A. Policy

"5. Other Insurance. . . .
"[I]f the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the

Company shall not be liable for a greater proportion of any loss to which this Coverage applies than the limits of liability hereunder bear to the sum of the applicable limits of liability of this insurance and such other insurance."

The parties agree that Betty Miller was "the insured" and "an insured" as those terms are used respectively in the M.F.A. and Allstate policies and was "a named insured" and "an insured" in the American Family policy. This appeal does not involve any dispute between M.F.A. and Allstate and the mutual effect of their clauses, one upon the other, is not addressed.[5]

With respect to the interaction of the M.F.A. provision and the American Family provision, the American Family policy does not constitute "other similar insurance available to him and applicable to the accident," as that language is used in the M.F.A. policy, for the reason that the operation of the American Family provision makes the American Family coverage, at least to the extent a $20,000 settlement is concerned, unavailable and inapplicable.[6] *Putnam v. New Amsterdam Casualty Co.,* 48 Ill.2d 71, 269 N.E.2d 97, 101–103[1] (1970); *McClure v. Employers Mutual Casualty Co.,* 238 N.W.2d 321, 327–28[5] (Iowa 1976); Appleman, Ins. Law & Prac., Vol. 8C, § 5102.65.

It is important to contrast the Allstate "other insurance" provision with the American Family provision. The latter is more favorable to American Family than Allstate's provision is to Allstate.

Under the Allstate provision, Allstate coverage "shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such

Allstate Policy

"7. Other Insurance. With respect to bodily injury to an insured while occupying an automobile not owned by the named insured, the insurance under this coverage shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance."

American Family Policy

"5. Other Insurance. With respect to bodily injury to an insured while occupying an automobile not owned by a named insured under this endorsement, the insurance hereunder shall apply only as excess insurance over any other similar insurance applicable to the automobile so occupied by the insured, and this insurance shall then apply only in the amount

automobile as primary insurance ...." The M.F.A. coverage was such "primary insurance," but American Family coverage was not "primary insurance." *McClure v. Employers Mutual Casualty Co.,* supra, 238 N.W.2d at 327[4]; Appleman, Ins. Law & Prac., Vol. 8C, § 5102.65. Since M.F.A. exhausted its coverage in making its $10,000 contribution to the $20,000 settlement, Allstate's coverage came into play and Allstate properly contributed its $10,000 to the settlement.

■ On the other hand, the American Family provision provides that American Family coverage "shall apply only as excess insurance over any other similar insurance applicable to the automobile so occupied by the insured." Both the M.F.A. policy and the Allstate policy constituted "any other similar insurance applicable" to the Ford. Thus American Family's coverage was not exposed in the making of the $20,000 settlement for the reason that such settlement was satisfied by the M.F.A. policy and only one of the Allstate policies.

The American Family "other insurance" provision effectively insulated it from a duty to contribute to a $20,000 settlement.

The judgment is reversed.

GREENE, C.J., and MAUS and CROW, JJ., concur.

by which the applicable limit of liability of this endorsement exceeds the sum of the applicable limits of liability of all such other insurance."

5. American Family comments that M.F.A. and Allstate contributed equally to the $20,000 settlement and thus acted inconsistently with their contention that the contribution should have been in the ratio of 1:2:2 or pro rata.

6. The American Family brief says, "No issue is made ... of the availability of five units of UM coverage. In the policies here and based upon the fact of Cassidy's ownership, Barnicle's operation and Miller's occupancy, all five UM coverages may be 'stacked' so that the total UM coverage of $50,000 is available to the UM claim of Miller." This opinion is limited to the issue of whether American Family had a duty to contribute to the $20,000 settlement.