636 F.Supp. 868 (1986)
John LINDHORST, Plaintiff,
v.
AVEMCO INSURANCE COMPANY, Defendant.
Clarence Rinke, et al., Intervenors.
No. 85-1150C(1).
United States District Court, E.D. Missouri, E.D.
June 17, 1986.
*869 Michael David Hart, Peper, Martin, Jensen, Maichel & Hetlage, St. Louis, Mo., for plaintiff.
Joseph M. Kortenhof, Kortenhof & Ely, St. Louis, Mo., for defendant.
Fred Roth, Clayton, Mo., for intervenors.

MEMORANDUM
NANGLE, Chief Judge.
This case is now before the Court on cross-motions for summary judgment. Plaintiff filed this action in state court seeking a declaration of the rights and duties of the parties under an insurance policy issued by defendant. Defendant removed the action on the basis of diversity jurisdiction, 28 U.S.C. § 1332, and the parties filed cross-motions for summary judgment. For the reason stated herein, the Court will grant defendant's motion for summary judgment and deny plaintiff's motion for summary judgment.[1]

FACTS
The relevant facts are not in dispute. On June 23, 1982, plaintiff John Lindhorst, while piloting a Belanca Viking airplane (Model 17-30, FAA Registration N-6656V) owned by Matthew Nunkovich, was forced to make an emergency landing near Columbia, Missouri. Traveling with Lindhorst were passengers Gary Minkin and Clarence J. Rinke. As a result of the landing, Minkin and Rinke were injured and subsequently filed lawsuits in state court against Bi-State Development Agency, John Lindhorst, Matthew Nunkovich and the Lazy Eight Flying Club, Inc. (Lazy Eight). Defendant, Avemco Insurance Co. (Avemco), *870 has provided a defense for Nunkovich and the Lazy Eight in the Minkin lawsuit.[2] Avemco has refused to accept the defense of Lindhorst in the two lawsuits. Lindhorst filed the present suit, seeking a declaration by the Court that he is an "insured" within the meaning of the insurance policy issued by Avemco. In response, Avemco argues that Lindhorst, as a renter pilot, is not an insured and, therefore, its decision not to assume his defense was proper. The Court agrees with Avemco.
At the time of the accident, Lindhorst and Rinke were working with Bi-State Development Agency in the planning and construction of a bus overhaul facility. Bi-State desired to purchase an industrial motor parts cleaning machine for the facility. The purpose of the trip was to observe a cleaning machine manufactured by a company owned by Minkin. It was necessary for Rinke, as a Bi-State employee, to see either the manufacture or the operation of the machine to qualify Minkin as a bidder for the proposed purchase. Defendant has stated  and plaintiff has not disputed  the fact that Minkin paid Lindhorst, who in turn paid Nunkovich, for use of the plane. At no time, in any of the memoranda filed with the Court, has plaintiff objected to defendant's statement that Lindhorst rented the plane from Nunkovich. Instead, plaintiff seeks to demonstrate that, despite having rented the aircraft from Nunkovich, plaintiff was covered under the terms of the policy at the time of the accident.

ANALYSIS
Under Rule 56 of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment if he can "show that there is no genuine issue as to any material fact and that [he] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). See also Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). In passing on a motion for summary judgment, a court is required to view the facts and inferences that may be derived therefrom in the light most favorable to the non-moving party. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983); Vette Co. v. Aetna Casualty and Surety Co., 612 F.2d 1076, 1077 (8th Cir.1980). The burden of proof is on the moving party and a court should not grant a summary judgment motion unless it is convinced that there is no evidence to sustain a recovery under any circumstances. Buller, 706 F.2d at 846. However, under Rule 56(e), a party opposing a motion for summary judgment may not rest upon the allegations of his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). See also 10A Wright, Miller and Kane, Federal Practice and Procedure, § 2739 (1983).
The construction of an unambiguous insurance contract is a question of law for the court, and the court should enforce the contract as made. Bernstein v. Fidelity Union Life Ins. Co., 449 F.Supp. 327 (E.D.Mo.1978). Plaintiff makes principally three arguments in support of his position that he is an insured within the meaning of the insurance policy.[3] Plaintiff's first argument is that he is *871 an "insured" because one of the named insureds, the Lazy Eight Flying Club, Inc., is an unincorporated association.[4] Plaintiff further states that an unincorporated association cannot be sued unless the individual members are named. Therefore, the policy provides no coverage unless it was intended to cover the individual members under the name Lazy Eight Flying Club, Inc. The Court finds plaintiff's argument both novel and wholly without merit. The Court sympathizes in part with plaintiff's frustration over the identity of the Lazy Eight Flying Club, Inc., see Order of the Court dated February 5, 1986, however, it cannot accept the argument that, upon forfeiture of a corporation's charter, an insurance policy insuring the corporation becomes a policy insuring all of its members. Certainly, no insurance company could envision the increased risk such a rule would place on it.
Moreover, the responsibility of maintaining a corporate charter rests with the corporation. To allow a corporation, by its own neglect, to greatly increase the number of insureds under an insurance policy, to the obvious detriment of an insurance company, makes no sense. While the Court is not required in this case to decide whether or not Lazy Eight remained covered under the policy, it is sufficient to say that if the policy in fact provided no coverage to the corporation, the fault lies with the corporation for failing to keep itself in good standing. It is not Avemco's responsibility, as Lindhorst argues, to provide some coverage for the premiums it receives, if in fact a named insured does not exist. Therefore, Lindhorst cannot step in and become a named insured simply by reason of the nonexistence of one of the named insureds listed on the policy. Accordingly, the Court rejects plaintiff's first argument.
Plaintiff's second argument is that the policy provisions excluding rental pilots (Endorsement 4) is ambiguous and, therefore, the exclusion should not be used to deny Lindhorst coverage. Under general insurance principles, policies are to be construed as liberally as possible in favor of the insured and all ambiguities are to be resolved against the insurer. Hampton Foods, Inc. v. Aetna Cas. and Sur. Co., 787 F.2d 349, 351-52 (8th Cir.1986); Bellamy v. Pacific Mutual Life Ins. Co., 651 S.W.2d 490, 495-96 (Mo.banc 1983); Ranger Ins. Co. v. Silverthorn, 553 S.W.2d 530, 533-34 (Mo.App.1977). The rule favoring the insured does not apply, however, unless there is an ambiguity created by the language of the policy. M.F.A. Mutual Ins. Co. v. American Family Mutual Ins. Co., 654 S.W.2d 230, 232 (Mo.App.1983); Melton v. Ranger Ins. Co., 515 S.W.2d 371, 374 (Tex.Civ.App.1974).
*872 The insurance policy, stipulated by the parties to be in effect at the time of the accident, under the heading INSURING AGREEMENTS, provides, in pertinent part:
III. Definition of Insured. With respect to the insurance for coverage A, the unqualified word "insured" includes the named insured and also includes any person while using the aircraft and any person or organization legally responsible for the use thereof, provided the actual use of the aircraft is by the named insured or with his permission. The insurance with respect to any person or organization other than the named insured does not apply:
(a) to any person or organization, or to any agent or employee thereof, engaged in the manufacturing of aircraft, aircraft engines or aircraft accessories, or operating an aircraft repair shop, airport, hanger or aircraft sales agency, with respect to any occurrence arising out of the manufacture or the operation thereof;
(b) to any employee with respect to bodily injury, sickness, disease or death of another employee of the same employer, injured in the course of such employment;
(c) with respect to bodily injury, sickness, disease or death of (1) a spouse, parent or child of such person or (2) a named insured;
(d) to any person receiving instruction, either dual or solo, unless specified in Item 7(a), of the declarations.
Endorsement 4, entitled "Commercial General Provisions Endorsement", provides, in pertinent part:
It is agreed that:
1. INSURING AGREEMENT III is amended to include:
(e) while the aircraft is subject to any rental or lease.
As an initial matter, it is obvious to the Court that Endorsement 4 was put into effect on the same date as the rest of the policy and forms a part of the policy in question (Policy No. AVR-167828). In addition, the Declaration sheet refers to Endorsements AEE-52, AEE-59, AEE-79 and AEE-11A. Endorsement 4 has the form identification number AEE-52 in the lower lefthand corner.
Plaintiff argues that Endorsement 4 is ambiguous in that the endorsement does not specifically indicate the aircraft to which its provisions are applicable. Plaintiff attempts to demonstrate that Endorsement 4 is ambiguous by directing the Court to Endorsement 11. Under the terms of Endorsement 11, which is entitled "Renter Pilot Extended Liability Coverage Endorsement", insurance coverage is extended to renter pilots. Plaintiff argues that when viewed together, Endorsements 4 and 11 constitute an ambiguity within the policy. The Court cannot agree. Endorsement 11 specifically provides that renter coverage is only provided with respect to Aircraft Nos. N-67402 and N-49447, both 1978 Cessna 152's.[5] The commercial general provisions endorsement (Endorsement 4) is a standard form which is attached to policies wherein rental to others is excluded from coverage under the policy. The parties may, however, elect to provide for coverage for renter pilots for some but not all of the planes covered by the policy. The fact that this additional coverage is obtained for two aircraft does not create an ambiguity within the language of the policy. It makes sense that Endorsement 4 excludes coverage for all rentals or leases of the aircraft, unless another specific endorsement, undoubtedly for additional premiums, removes the exclusion for certain aircraft. It is common sense which dictates the Court's conclusion that no ambiguity exists in Endorsements 4 and 11.
Plaintiff also argues that the policy is ambiguous in that the endorsements *873 which added Nunkovich's (misspelled Munisovich) aircraft to the policy (Endorsements 75, 76, 77 and 78) state that the aircraft is insured for "limited commercial" purposes, which includes instruction and rental to others but excludes passenger carrying for hire or reward. Plaintiff argues that the declaration of permissible use of the aircraft which includes "rental to others" creates an ambiguity.
In Ranger Ins. Co. v. Silverthorn, supra, the Missouri Court of Appeals was presented with the same issue. Under the policy's definition of "insured", renter pilots were excluded from coverage. Under the "Purpose(s) of Use" clause, the aircraft was to be used only for limited commercial purposes. The policy defined limited commercial purposes as including rental to pilots. The court rejected the argument that the "Purposes of Use" clause created an ambiguity in the policy. The court went on to state:
The declarations do state what uses of the aircraft will be covered under the insurance provided, but, other than showing the named insured, the declarations do not purport to define who, other than that entity, is entitled to the benefit of the insurance provided for the covered uses. Insofar as persons other than the named insured are concerned, the terms of the policy defining to whom protection will be extended must be looked to. In extending coverage to persons other than the named insured, the policy clearly and unequivocally excludes "any persons operating the aircraft under the terms of any rental agreement ... which provides remuneration to the Named Insured for the use of said aircraft."
The "Purpose(s) of Use" which includes rental to pilots provides coverage to the named insured for liability which might be imposed upon it arising out of such use of the aircraft. The parties to the contract of insurance were under no obligation to provide coverage for the rental pilots and by the terms of the policy elected not to do so. There can be no question as to their right so to contract.
Similarly, in Crawford v. Ranger Ins. Co., 653 F.2d 1248, 1251 (9th Cir.1981), the Ninth Circuit considered the argument made by Lindhorst to be "meritless". That court went on to state that "[t]he overwhelming weight of authority is that there is no inconsistency between a declaration that rental to pilots is a permissible use and a pilot exclusionary clause" (case cites omitted). Id.
The Court recognizes that several courts have concluded that the purpose of use provisions permitting rental of the aircraft to pilots extended insurance coverage to rental pilots despite other exclusionary provisions printed in the policy. See Martin v. Ohio Casualty Ins. Co., 9 Mich.App. 598, 157 N.W.2d 827 (1968); Wzontek v. Zurich Ins. Co., 418 Pa. 30, 208 A.2d 861 (1965). The Court, however, believes the better reasoned rule of law is contained in Silverthorn and the Ninth Circuit's opinion in Crawford. See also National Fire Ins. Co. v. Rick, 134 Ariz. 122, 654 P.2d 56 (1982); Levra v. National Union Fire Ins. Co., 99 Idaho 871, 590 P.2d 1017 (1979); Buestad v. Ranger Ins. Co., 15 Wash.App. 754, 551 P.2d 1033, 1034 (1976) ("We disagree with [Martin v. Ohio Casualty Ins. Co.] and join with the courts of Texas and California in holding that the provisions restricting coverage by the use made of the aircraft do not extend the protection offered by the policy to persons not defined as `Insured.' Melton v. Ranger Ins. Co., 515 S.W.2d 371 (Tex.Civ.App.1974), Middlesex Mutual Ins. Co. v. Johnston, 12 Avi. 17,583 (Cal.Ct. of App.1972).").
Finally, plaintiff asserts that Avemco's act of providing a defense to Nunkovich and Lazy Eight in the Minkin suit demonstrates that the policy is ambiguous. Plaintiff claims that since Nunkovich is not a named insured, defendant's assumption of his defense is inconsistent with the terms of the policy and necessitates a finding that Lindhorst is also entitled to a defense from Avemco. The Court cannot agree. Avemco states that it has provided a defense for Nunkovich based on Endorsement 78 which, according to Avemco, adds *874 Nunkovich as a named insured as to his own aircraft. The question of whether or not Nunkovich is a named insured is not before the Court. Avemco's explanation is, however, sufficient for the Court to conclude that defendant is not, as plaintiff alleges, picking and choosing to whom to provide coverage for and to whom not to provide coverage for.
Having considered each of plaintiff's arguments, the Court finds that the exclusionary provision for rental pilots is not ambiguous. It is not the function of the Court to create an ambiguity where none exists. Crawford, 653 F.2d at 534. Lindhorst does not dispute the fact that he paid Nunkovich for use of the aircraft. Therefore, his operation of the aircraft under these conditions was within the exclusionary provision of the policy. Accordingly, defendant's motion for summary judgment must be granted and plaintiff's motion for summary judgment must be denied.
NOTES
[1] The intervenors have not participated in the case except to the extent of filing a motion to intervene and petition for relief. The Court's decision to grant summary judgment in favor of the defendant also necessarily resolves the intervenors' petition in favor of Avemco.
[2] According to the parties, Nunkovich and Lazy Eight have not yet been served in the Rinke lawsuit.
[3] This case presents a somewhat tangled conflicts of law question. The insurance policy in question was negotiated for Lazy Eight Flying Club, Inc., by Edward W. Martens, of Memphis, Tennessee, through Wesley Coble at Avemco's regional office in Memphis. The policy covered planes operating out of the Bi-State Airport in Cahokia, Illinois. Lindhorst and several other members were Missouri residents. The Lazy Eight Flying Club, Inc., was a Missouri corporation until January 1, 1981, when it forfeited its corporate charter for failing to file an annual report. The Court pointed out the conflicts question to the parties and directed supplemental briefs on the choice of law question.

In a diversity action, the Court is bound to follow the law of Missouri, the forum state. Klaxon Co. v. Stentor Electric Mfgr. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). While there is some doubt concerning which conflicts of law rule is to be applied to actions on insurance contracts, see Wright v. Newman, 598 F.Supp. 1178, 1192 (W.D.Mo. 1984), application of either the "most significant relationship", see Restatement Second of Conflicts, § 188; Havenfield Corp. v. H. & R. Block, Inc., 509 F.2d 1263, 1267 (8th Cir.1975), cert. denied, 421 U.S. 999, 95 S.Ct. 2395, 44 L.Ed.2d 665 (1975), or the lex locus contractus rule, see Miller v. Home Ins. Co., 605 S.W.2d 778, 779-80 (Mo.banc 1980), would result in the application of the law of one of three states, Missouri, Illinois or Tennessee. The parties have not cited, nor has the Court located, any significant distinctions between the law of these three states, with respect to the issues involved in this case. Accordingly, the Court, because of consistency and ease of determination and application, will apply the law of Missouri, the forum state. See Restatement (Second) of Conflicts of Laws § 6.
The Court's decision to apply Missouri law should not come as a surprise to either party. Lazy Eight was, at the time the insurance policy was originally issued, a Missouri corporation, with a large number of Missouri residents as members. Lindhorst was a Missouri resident, the emergency landing occurred in Missouri and the resulting state court injury actions were filed in Missouri. Furthermore, application of Missouri law principles will not be contrary to any fundamental policy of the other two states.
[4] The Lazy Eight Flying Club, Inc. (Lazy Eight) was originally incorporated in the State of Missouri on August 21, 1978. The club was apparently a spinoff of a Tennessee organization started by Edward W. Martens, called Lazy Eight, Inc. With respect to the Missouri organization, Mr. Martens is listed as President and as a member of the Board of Directors. Steve Demster, of St. Louis, Missouri, is listed as Secretary, Treasurer and Registered Agent. The Lazy Eight Flying Club, Inc., forfeited its corporate charter on January 1, 1981, for failing to file an annual report. The Lazy Eight has not corrected the infirmity, nor has it been incorporated anywhere else.
[5] Avemco states that this additional coverage was purchased to provide insurance for ROTC students desiring flight instruction.