U.S. FIRE INSURANCE COMPANY, Respondent,

v.

Billy G. COLEMAN and Dorothy F. Coleman, d/b/a Coleman Realty, Appellants.

No. 53529.

Missouri Court of Appeals, Eastern District, Division Four.

Aug. 16, 1988.

Brown, James & Rabbitt, P.C., Russell F. Watters, Robert W. Cockerham, St. Louis, for respondent.

Mayhugh & Harris, Eric C. Harris, Flat River, for appellants.

SIMON, Presiding Judge.

This appeal arises out of a declaratory judgment proceeding initiated by respondent, U.S. Fire Insurance Company, seeking a declaration of rights and obligations under its excess liability insurance policy issued to appellants, Billy and Dorothy Coleman, where appellants' primary insurer, North–West Insurance Company, became insolvent and was unable to indemnify and defend appellants in a personal injury action. The trial court, making findings of fact and conclusions of law, entered a judgment in favor of respondent declaring that respondent has no obligation to pay any loss that is within the policy limits of the primary insurance until such loss exceeds the policy limits of the primary insurance and that respondent has no duty to provide appellants a defense or defense costs for the underlying personal injury action.

On appeal, appellants contend that the trial court erred in declaring that respondent: (1) was not required to provide coverage for amounts below its $500,000 policy floor because the excess insurance policy is ambiguous and therefore must be construed in favor of the insured; and, (2) was not obligated to defend the underlying personal injury action because the excess insurance policy makes clear that the duty to defend is broader than the duty to indemnify and the policy is ambiguous and therefore must be construed in favor of the insured. We affirm.

Appellants were the owners of the Bonneville Plaza Shopping Center, in Bonne Terre, Missouri on February 6, 1984, when Prudence Pettus slipped and fell on ice and snow on the parking lot. On November 26, 1984, Mrs. Pettus and her husband filed a personal injury lawsuit against appellants seeking damages of $500,000.

At the time of the alleged injury, appellants had primary or underlying insurance in the amount of $500,000 through North–West Insurance Company. Appellants also had an excess or "umbrella" insurance policy written by respondent for $1,000,000 above and beyond the primary coverage.

In December, 1984, North–West declared bankruptcy and was subsequently declared insolvent. Appellants timely filed their claim with North–West and, presently, Missouri Insurance Guaranty Association, pursuant to statute, is providing defense and coverage of this claim.

Appellants notified respondent of the personal injury action and the insolvency of North–West and requested that respondent indemnify them and defend the action. Respondent declined to indemnify and provide defense and, thereafter, filed the declaratory judgment action from which appellants appeal.

In their first point on appeal, appellants contend that several provisions of respondent's excess insurance policy are ambiguous and should be construed in their favor so as to afford coverage.

Respondent's excess insurance policy provides for liability coverage in the amount of $1,000,000, subject to several limiting provisions, some of which form the basis of appellants' claim of ambiguity.

Section I, COVERAGE, of the policy provides, in pertinent part:

The Company agrees to pay on behalf of the insured the ultimate net loss in excess of the retained limit hereinafter stated, which the insured may sustain by

reason of the liability imposed upon the insured by law, arising out of an occurrence or assumed by the insured under contract, for:

(a) Personal Injury Liability.

.    .    .    .    .

Section V, RETAINED LIMIT—LIMIT OF LIABILITY, provides, in pertinent part:

[T]he company's liability shall be only for the ultimate net loss *in excess* of the insured's retained limit defined as the greater of:

(a) the total of the applicable limits of the underlying policies listed in Schedule A hereof, and the applicable limits of any *other insurance collectible* by the insured; or

(b) an amount as stated in item 4(C) of the declarations as the result of any one occurrence not covered by the said policies or insurance;

And then an amount up to not exceeding the amount as stated in Item 4(A) of the declarations as the result of any one occurrence. There is no limit to the number of occurrences during the policy period for which claims may be made, except that the liability of the company arising out of the products hazard on account of all occurrences during which policy year shall not exceed the aggregate amount stated in Item 4(B) of the declaration. In the event of the reduction or exhaustion of the aggregate limits of liability of the underlying policies listed in Schedule A *by reason of losses paid thereunder,* this policy, subject to the above limitations, (1) in the event of reduction, shall pay the excess of the reduced underlying limits; or (2) in the event of exhaustion, shall continue in force as underlying insurance. (emphasis ours.)

Item 4(A) of the declarations provides for liability coverage of $1,000,000 with respect to each occurrence. Item 4(C) of the declarations provides "zero" self-insured retention, thereby stating that appellants do not assume personal liability for any amount. Schedule A lists the primary policy of North–West for $500,000 as the only underlying insurer.

Appellants contend that the definition of the term, "retained limit," in Section V is ambiguous and subject to different interpretations and that the term, "collectible," in Section V refers to both of the phrases "underlying policies" and "other insurance." Therefore, the provision provides coverage which drops down below the policy floor when the primary insurance is not collectible.

Secondly, appellants contend that the final provision in Section V relating to exhaustion or reduction of the primary insurance is ambiguous because it does not specifically require that exhaustion be as a result of losses paid to the insured appellants. Appellants argue that this provision takes effect and provides coverage because the primary insurer is insolvent as a result of general excessive losses.

Appellants contend that two other provisions of respondent's excess insurance policy make the above ambiguities more apparent. Under the portion of the policy titled, CONDITIONS, section G, the "Loss Payable" clause, provides:

Liability of the company with respect to any one occurrence shall not attach unless and until the insured, *the company in behalf of the insured,* or the insured's underlying insurer, has paid the amount of retained limit. (emphasis ours.)

Appellants read this clause to indicate that the excess insurer will in some cases pay the retained limit and, therefore, must "drop down" and provide primary coverage in this instance.

Finally, appellants find an ambiguity in, CONDITIONS, section I, the "Other Insurance" clause, which provides:

If *other collectible insurance* including other insurance with this company is available to the insured covering a loss also covered hereunder (except insurance purchased to apply in excess of the sum of the retained limit and the limit of liability hereunder) the insurance hereunder shall be in excess of and not contribute with, such other insurance. (emphasis ours.)

Appellants read this clause in conjunction with the provision in Section V defining

"retained limit," and interpret the phrase, "other collectible insurance," to include the primary insurance policy. Therefore, appellants claim that this ambiguous clause along with the other ambiguous provisions require the adoption of the interpretation which affords coverage to the appellants.

Initially, we note that in a declaratory judgment action we will sustain the trial court's decree unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Abco Tank and Manufacturing v. Federal Insurance*, 550 S.W.2d 193, 197[1] (Mo. banc 1977) (quoting *Murphy v. Carron*, 536 S.W.2d 30, 32 [1–3] (Mo. banc 1976)).

The rules of construction applicable to insurance contracts require that plain and unambiguous language be afforded its plain meaning. *Fremont Indemnity v. Lawton–Byrne–Bruner Insurance*, 701 S.W.2d 737, 741[1] (Mo.App.1985). The language of a contract is ambiguous when there is doubt or uncertainty as to its meaning and it is fairly susceptible of two interpretations. *Nixon v. Life Investors Insurance Company of America*, 675 S.W.2d 676, 679[5–10] (Mo.App.1984). In an insurance policy, ambiguity rises when there is duplicity, indistinctness or uncertainty of meaning. *Id.* To determine what meaning was intended, the ambiguous phrase is not considered in isolation, but by reading the policy as a whole with reference to associated words. *Id.* If the language of the insurance policy is in fact ambiguous, the interpretation which is most favorable to the insured must be adopted. *M.F.A. Mutual Insurance v. American Family Mutual Insurance*, 654 S.W.2d 230, 232[1–4] (Mo.App.1983). That principle, however, does not authorize courts, under the guise of interpretation or construction, to alter or rewrite a policy. *Id.* Courts may not create an ambiguity where none is present. *Gabel v. Bird*, 422 S.W.2d 341, 343 [1–2] (Mo.1967).

Here, the trial court ruled as a matter of law that the provisions of the excess insurance policy are clear and unambiguous. Although the language in question is not favorable to the appellants, we conclude that the language is unambiguous.

In our analysis, we are aided by the Supreme Court of Georgia in *U.S. Fire Insurance v. Capital Ford Truck Sales*, 257 Ga. 77, 355 S.E.2d 428 (1987), wherein the court analyzed and interpreted an apparently similar excess insurance policy of the respondent and held that the insolvency of the primary insurer does not require the excess insurer to drop down and provide primary coverage. *Id.* at 433. In *U.S. Fire, supra*, the court found that the initial provision, Section V(a), relating to liability, clearly distinguishes between the primary insurance policy and other insurance, with the term, "collectible," modifying only the phrase, "any other insurance," and not the phrase, "the underlying policies." The court also found that the liability provision expressly states that the exhaustion of the aggregate limits of liability of the primary policy must be by reason of losses paid thereunder, not insolvency of the primary insurer. The court also concluded that several other provisions in the excess insurance policy using the term, "collectible," were to be interpreted as consistent with Section V(a), with the term, "collectible," modifying only the phrase "other insurance."

After reviewing the insurance policy, we find no basis to disagree with the Supreme Court of Georgia's conclusion in an apparently similar policy. Applicable federal case law and case law from other jurisdictions further lend support to the Supreme Court of Georgia's conclusion. *See Molina v. U.S. Fire Insurance*, 574 F.2d 1176 (4th Cir.1978); *see also Mission National Insurance v. Duke Transportation*, 792 F.2d 550 (5th Cir.1986); *Guaranty National Insurance v. Bayside Resort*, 635 F.Supp. 1456 (D. Virgin Islands 1986); *St. Vincent's v. Insurance Company of North America*, 117 Misc.2d 665, 457 N.Y.S.2d 670 (N.Y.Sup.Ct.1982); *but see Donald B. MacNeal v. Interstate Fire and Casualty*, 132 Ill.App.3d 564, 87 Ill. Dec. 794, 477 N.E.2d 1322 (1985); *Reserve Insurance v. Pisciotta*, 30 Cal.3d 800, 180 Cal.Rptr. 628, 640 P.2d 764 (en banc 1982). Thus, we

conclude that the policy is not ambiguous and the trial court did not err in finding as a matter of law that the respondent has no obligation to pay any loss that is within the policy limits of the insolvent primary insurer.

In their second point, appellants allege that respondent is obligated to defend the underlying personal injury action where the primary insurance carrier is insolvent because the excess insurance policy is ambiguous and because the duty to defend is broader than the duty to indemnify.

The excess insurance policy under Section II, DEFENSE SETTLEMENT, provides:

> With respect to any occurrence not covered, as warranted, by the underlying policies listed in Schedule A hereof or not covered by any other underlying insurance collectible by the insured, but covered by the terms and conditions of this policy except for the amount of retained limit specified in Item 4(c) of the declarations, the company shall:
>
> > (a) defend any suit against the insured alleging such injury or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;
>
> .     .     .     .     .

Appellants contend that there are two ambiguous phrases that are reasonably open to different interpretations. The first phrase, "not covered," appellants construe to mean "not actually covered" by the primary insurance policy. Therefore, appellants claim that respondent must provide defense because the insurer is insolvent and cannot provide "actual" coverage.

The second phrase appellants contest as ambiguous is "except for the amount of retained limit." Appellants interpret this phrase to obligate the respondents to defend actions even when the claims are below the retained limit.

Although an insurer's duty to defend is broader than the duty to indemnify, *Mis-*

*souri Terrazzo Company v. Iowa National Mutual Insurance,* 740 F.2d 647, 652[5–7] (8th Cir.1984), all provisions of an insurance policy must be given effect and the policy must be reasonably construed "in light of the specific situation with which the parties are dealing." *M.F.A. Mutual Insurance v. American Family Mutual Insurance,* 654 S.W.2d at 232 [1–4] (quoting *M.F.A. Mutual Insurance v. Dunlap,* 525 S.W.2d 766, 769[1–7] (Mo.App.1975). It also must be remembered that we need only afford plain and unambiguous language its plain meaning. *Fremont Indemnity v. Lawton–Byrne–Bruner Insurance,* 701 S.W.2d at 741[1].

With these principles in mind, we conclude that the language of the defense provision in respondent's excess insurance policy is clear and unambiguous. *See U.S. Fire Insurance v. Capital Ford Truck Sales,* 355 S.E.2d at 433. The occurrence was "covered" by the terms of the primary insurance. The addition of the words "not actually" as modifiers of the word "covered" is not warranted. Therefore, the defense responsibility was not triggered since the occurrence, i.e., the fall, is an occurrence covered by the policy terms. Further, we find no ambiguity in the phrase "except for the amount of the retained limit." Reading the defense provision in conjunction with the other policy provisions, there is no ambiguity. Thus, the trial court properly found that respondent has no duty to provide defense for appellants in the underlying personal injury action. Point denied.

Judgment affirmed.

CRANDALL and GRIMM, JJ., concur.