**FRED WEBER, INC., Plaintiff–Appellant,**

v.

**GRANITE STATE INSURANCE CO., Defendant–Respondent.**

Nos. 59435, 59775.

Missouri Court of Appeals,
Eastern District,
Division Three.

March 24, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied
April 20, 1992.

Application to Transfer Denied
June 2, 1992.

David O. Danis, Richard Alan Cooper, Clayton, for plaintiff-appellant.

Mary F. Stafford, Chicago, Ill., John D. Warner, Jr., St. Louis, James T. Ferrini, Sonia V. Odarczenko, Edward M. Kay, Susan Condon, Chicago, Ill., for defendant-respondent.

STEPHAN, Judge.

■ Fred Weber, Inc. appeals from the judgment entered by the trial court granting respondent Granite State Insurance Company's motion to dismiss Fred Weber, Inc.'s petition for declaratory judgment.[1] We affirm.

The allegations in appellant's petition for declaratory judgment, although sketchy, provide a sufficient factual backdrop to this appeal. Integrity Insurance Company ("Integrity") had insured appellant under a commercial catastrophe liability policy. For a $35,000 annual premium, Integrity provided first tier excess coverage of five million dollars in excess of an underlying primary insurance company identified in Integrity's policy schedule. During the same period, Granite State provided a second layer of excess umbrella liability coverage through Granite State. The Granite State policy contained a five million dollar liability limit in excess of Integrity's underlying policy limits. The annual premium for the Granite State policy was $15,611, an amount less than half that of Integrity's premium. Appellant had settled a lawsuit filed against it, but the settlement exceeded the policy limits of its primary insurer. Appellant sought recovery for the excess settlement amount it owed; however, Integrity had been declared insolvent. Appellant then filed its petition for declaratory judgment asking that Granite State be obligated under the terms of its insurance policy to "drop down" and fill the gap in appellant's insurance coverage created by the insolvency of Integrity.[2] The trial court determined the terms of Granite State's policy were unambiguous and did not require that it drop down and provide coverage.

The precise issue before us is whether the trial court erred in holding that the language of Granite State's excess liability policy does not require it to drop down and provide coverage to appellant because of Integrity's insolvency.

---

1. The parties disagree on the procedural posture of this case. Appellant labels Granite State's motion to dismiss under Rule 55.27(a)(6) as a motion for summary judgment under Rule 74.04 or a motion for judgment on the pleadings under Rule 55.27(b). Generally, when matters outside the pleadings are presented to and not excluded by the court, a motion to dismiss is to be treated as one for summary judgment. *Black Leaf Products Co. v. Chemsico, Inc.,* 678 S.W.2d 827, 829 (Mo.App.1984). That is not the case here. The record before us does not reflect what matters were presented to the trial court at its hearing on Granite State's motion to dismiss; however, the court's order specified that it was a ruling on that motion. We accept that at face value.

2. "Drop-down" coverage occurs when an insurance carrier of a higher level of coverage is obligated to provide the coverage that the carrier of the immediately underlying level of coverage has agreed to provide. *Annot.,* 85 A.L.R.4th 729, 734 n. 4 (1991). This comprehensive annotation, titled "Primary Insurer's Insolvency as Affecting Excess Insurer's Liability", provides an excellent survey of case law on the issue of drop-down coverage.

Appellant argues that its reasonable expectations as the insured, the failure of the insurer to specify insolvency for exclusion of coverage, and ambiguities in the insurance policies of both Granite State and Integrity are all reasons for finding the trial court erred.

At the outset, we note that certain fundamental principles control our review of Granite State's insurance policy. The rules of construction applicable to insurance contracts require that plain and unambiguous language be afforded its plain meaning. *U.S. Fire Insurance Co. v. Coleman*, 754 S.W.2d 941, 944 (Mo.App. 1988). The language of a contract is ambiguous when there is doubt or uncertainty as to its meaning and it is fairly susceptible of two interpretations. *Id.* In an insurance policy, ambiguity rises when there is duplicity, indistinctness or uncertainty of meaning. *Id.* To determine what meaning was intended, the ambiguous phrase is not considered in isolation, but by reading the policy as a whole with reference to associated words. *Id.* If the language of the insurance policy is in fact ambiguous, the interpretation which is most favorable to the insured must be adopted. *Id.* That principle, however, does not authorize courts, under the guise of interpretation or construction, to alter or rewrite a policy. *Id.* Courts may not create an ambiguity where none exists. *Id.*

The insuring agreements of Granite State's insurance policy contain the following pertinent provisions:

I. COVERAGE

The Company [Granite State] hereby agrees, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Assured [Fred Weber, Inc.] for all sums which the Assured shall be obligated to pay by reason of the liability (a) imposed upon the Assured by law, or (b) assumed under contract or agreement by the Named Assured ... for damages ... caused by or arising out of each occurrence happening anywhere in the World, and arising out of the hazards covered by and as defined in the Underlying Umbrella Policies stated in Item 2 of the Schedule, (hereinafter called the 'Underlying Umbrella Insurers') [Integrity].

\* \* \* \* \* \*

II. LIMIT OF LIABILITY—UNDERLYING LIMITS

It is expressly agreed that liability shall attach to the Company [Granite State] only after the Underlying Umbrella Insurers [Integrity] have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as follows: [$5,000,000] Ultimate net loss in respect of each occurrence ... and the Company [Granite State] shall then be liable to pay only the excess thereof up to a further [$5,000,000] ultimate net loss in all in respect of each occurrence— subject to a limit of [$5,000,000] in the aggregate for each annual period during the currency of this Policy separately....

We discern absolutely no ambiguity in Granite State's policy where its limit of liability provision clearly states that "liability shall attach only after the Underlying Umbrella Insurers [Integrity] *have paid or have been held liable to pay* the full amount of their respective ultimate net loss liability ..." (Emphasis ours). Nowhere in the petition does appellant allege that Integrity paid or was held liable to pay in order to trigger Granite State's obligation to pay. Nowhere in the petition does it allege that the language of the Granite State policy is ambiguous. Nowhere in Granite State's policy is there any provision which mentions insolvency or any language which intimates that Granite State would drop down in the event of Integrity's insolvency. We do not believe that any language in this policy could reasonably be said to have insured against the insolvency of the underlying insurer. *Accord, Interco Inc. v. National Surety Corp.*, 900 F.2d 1264, 1267 (8th Cir.1990). We agree with the trial court's ruling that Granite State's policy was unambiguous and provided no coverage.

Appellant, in an effort to create an ambiguity where we believe none exists, highlights certain other portions of the policy issued by Granite State. Granite State's policy also includes a section captioned "CONDITIONS" of which there are five. The five conditions are as follows: prior insurance and non cumulation of liability, maintenance of underlying umbrella insurance, cancellation, notice of occurrence, and other insurance. Appellant focuses its attention on the second condition "MAINTENANCE OF UNDERLYING UMBRELLA INSURANCE" which includes:

> *This Policy is subject to the same terms, definitions, exclusions and conditions* (except as regards the premium, the amount and limits of liability and except as otherwise provided herein) *as are contained in* or as may be added to the Underlying Umbrella Policies stated in Item 2 of the Schedule [*Integrity's policy*] prior to the happening of an occurrence for which claim is made hereunder.
>
> It is a condition of this Policy that the Underlying Umbrella Policies shall be maintained in full effect during the currency hereof, except for any reduction of the aggregate limits contained therein solely by payment of claims in respect of accidents and/or occurrences occurring during the period of this Policy.... (Emphasis ours).

Appellant interprets this provision as one which, excluding those exceptions listed parenthetically, incorporates the Integrity policy *in toto*. Based on this language, appellant turns to the Integrity policy.

The Integrity policy contains several insuring agreements which provide in part as follows:

### 2. UNDERLYING LIMIT—RETAINED LIMIT

> The Company shall be liable only for the ultimate net loss the excess of the greater of the Insured's underlying limit or retained limit defined as:
>
> (a) Underlying limit—an amount equal to the limits of liability indicated beside the underlying insurance listed in the schedule of underlying insurance, plus the applicable limits of any other underlying insurance *collectible by the insured;*
>
> (b) Retained limit—The amount specified in Item 3(c) of the declarations as the result of an occurrence not covered by said underlying insurance, and which shall be borne by the insured, separately as respects to each occurrence during the period of this policy. (Emphasis ours).

Relying on this second insuring agreement "underlying limit—retained limit" in Integrity's policy, appellant emphasizes the phrase "collectible by the insured" and adduces that Integrity's insolvency results in a situation where its underlying insurance is not collectible by the insured. Appellant concludes this provision creates Granite State's duty to provide coverage.

Appellant's argument assumes the phrase "collectible by the insured" modifies the phrase "underlying insurance listed in the schedule of underlying insurance", and thus requires the scheduled insurance be "collectible". Appellant relies upon *Alabama Insurance Guaranty Association v. Magic City Trucking Service,* 547 So.2d 849 (Ala.1989). While this case may be of precedential value in Alabama, we see no need to turn to the jurisprudence of a sister state. This court addressed a similar issue in *U.S. Fire Insurance v. Coleman,* 754 S.W.2d 941, 944–45 (Mo.App.1988), and held that "collectible" modifies only the phrase "other underlying insurance." We find our own case of *U.S. Fire Insurance* more compelling precedent than that of *Magic City Trucking Service* and reject this tack by appellant.

Appellant argues alternatively that the third insuring agreement in Integrity's policy provides a basis for finding Granite State was obligated to drop down and provide coverage. That provision provides in part as follows:

### 3. LIMITS OF LIABILITY

\*        \*        \*        \*        \*        \*

> In the event that the aggregate limits of liability of the underlying policies, listed in the schedule of underlying insurance, *are exhausted* or reduced, solely as the result of occurrences taking place

after the inception date of this policy, this policy shall, subject to the Company's limit of liability and to the other terms of this policy, with respect to occurrences which take place during the period of this policy, continue in force as underlying insurance for the remainder of the policy year of the underlying policy or until the Company's aggregate limit of liability (stated in Item 3(b)) is exhausted, but not for broader coverage than was provided by the exhausted underlying insurance. (Emphasis ours).

Appellant states that its underlying insurance "is exhausted" by Integrity's insolvency, so that the "limits of liability" provision in the insuring agreement of Integrity's policy also creates an obligation upon Granite State to drop down and provide coverage.

The fatal flaw in this argument by appellant is the failure to read the provision in context. The policy specifies "are exhausted or reduced, *solely as the result of occurrences* taking place after the inception date of this policy." The glossary in Integrity's policy defines "occurrence" to mean "an accident, including continuous or repeated exposure to conditions, which results in personal injury, property damage or advertising liability neither expected nor intended from the standpoint of the insured." Insolvency clearly is not an "occurrence" within this policy provision.

Appellant disputes Granite State's position that it never intended to drop down because of the insolvency of Integrity and contends that if this had been respondent's intention, then it clearly could have excluded such a possibility. Appellant claims that the failure of Granite State to specifically exclude the insolvency of Integrity must fall upon Granite State as the author of its policy.

It is true that when the language of an insurance policy is in fact ambiguous, the interpretation which favors the insured must be adopted. *U.S. Fire Insurance Co. v. Coleman,* 754 S.W.2d 941, 944 (Mo.App. 1988). Appellant, however, has confused the effect of silence with that of ambiguity. It is just as logical to conclude that by not specifically listing insolvency as an exclusion, the parties clearly did not contemplate insolvency of the insurer as an event triggering liability.

We conclude that the policy of Granite State is not ambiguous and the trial court did not err in finding as a matter of law that respondent has no obligation to pay any loss that is within the policy limits of the insolvent primary insurer.

The judgment is affirmed.

PUDLOWSKI, P.J., and CRIST, J., concur.