565 S.E.2d 793

STATE of West Virginia ex rel. MOBIL CORPORATION; CCS, Inc.; Dravo Corporation; Great Lakes Carbon Corporation; Green Tweed & Company, Inc.; Limbach, Inc.; Pittsburgh Metals Purifying Company; Plibrico Company; Robertson CECO Corporation; Seegott, Inc.; Zurn Industries; General Electric Company; Monsanto Company, nka

Pharmacia Corporation; Combustion Engineering, Inc.; Certain Defendants and Certain Premises and Employer Defendants; Ford Motor Company; Daimler Chrysler Corporation; and General Motors Corporation

v.

Honorable Martin J. GAUGHAN, in his capacity as a Judge/Special Appointee of the West Virginia Mass Litigation Panel; and all plaintiffs in the case styled In re Asbestos Litigation, Civil Action No. 01–C–9000, Kanawha County.

No. 30314.

Supreme Court of Appeals of
West Virginia.

July 5, 2002.

See majority opinion, 211 W.Va. 106, 563 S.E.2d 419.

MAYNARD, Justice, concurring.

Frankly, this case leaves me with a profound disquiet. Mobil argues very persuasively and convincingly that the defendants have been denied due process in our courts. In fact, after a careful reading of the brief prepared by Steve Farmer, I am compelled to state that I am deeply concerned that Mobil is probably correct and some federal court will eventually tell us so. However, at this juncture at least, Mobil's claims of due process violations are premature because the trial court has not completed its trial plan. For that reason, I concur in the majority decision to deny extraordinary relief and write separately.

Initially, I must state that the observations and cautionary concerns set forth in the majority opinion are troubling when viewed in light of opinions handed down by the United States Supreme Court. For example, in *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 625, 117 S.Ct. 2231, 2250, 138 L.Ed.2d 689, 714 (1997), the Court upheld a court of appeals' decision to decertify an asbestos class which was intended to achieve a global settlement of current and future asbestos-related claims nationwide, stating that "individual stakes are high and disparities among class members great." Two years later, the Court rejected another proposed global class of asbestos cases for essentially the same reasons. *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999).

Mobil asserts, by referencing opinions such as these, that we may live to regret this decision for several reasons:

- the consolidation of thousands of dissimilar and unrelated asbestos claimants into a single trial violates procedural rules and the constitutional right to due process and equal protection;
- consolidation of asbestos cases violates Rule 42 of the West Virginia Rules of Civil Procedure, as well as the United States and West Virginia Constitutions;
- the use of a matrix to assess damages is a blatant and indefensible violation of Mobil's due process rights;
- the method for calculating punitive damages under the mass trial format advocated by the plaintiffs is unconstitutional;
- plaintiffs' mass trial plan offers no increased efficiency over single plaintiff trials; and
- a mass trial format will violate Mobil's right to a jury trial under state law and its due process rights.

As Mr. Farmer points out in his brief, this litigation involves thousands of plaintiffs; twenty or more defendants; hundreds of different work sites located in a number of different states; dozens of different occupations and circumstances of exposure; dozens of different products with different formulations, applications, and warnings; several different diseases; numerous different claims at different stages of development; and at least nine different law firms, with differing interests, representing the various plaintiffs. Additionally, the challenged conduct spans the better part of six decades.

The predominance of individual and irreconcilable differences from plaintiff to plaintiff in this litigation is illustrated by the potential problems with choice of law issues. Moreover, as many as five thousand of the plaintiffs included in the June 24, 2002 mass trial are not West Virginia residents and were never exposed to asbestos in this State.

Rather, they have migrated here because of the asserted pro-plaintiff bias with which Mobil claims this State handles asbestos litigation. This improper pilgrimage must be abated before one can even consider consolidation of cases to be a viable option.

West Virginia recognizes the doctrine of *lex loci delicti*, "that is, the substantive rights between the parties are determined by the law of the place of injury." *Vest v. St. Albans Psychiatric Hosp.*, 182 W.Va. 228, 229, 387 S.E.2d 282, 283 (1989); *McKinney v. Fairchild International, Inc.*, 199 W.Va. 718, 729, 487 S.E.2d 913, 924 (1997). Accordingly, the laws of many jurisdictions (including Pennsylvania, Ohio, Maryland, Kentucky, and Virginia, to name a few) will have to be considered and applied by a trial court during any mass trial in this litigation. The United States Supreme Court has established that, as a matter of due process, a state cannot categorically apply its substantive law to govern claims in which a state has little or no interest. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821–22, 105 S.Ct. 2965, 2979, 86 L.Ed.2d 628, 648 (1985).

All the due process arguments are compelling, but this is the due process claim about which I am most fearful of eventual reversal. Because so many of the plaintiffs have NO connection whatsoever with West Virginia, and because the United States Supreme Court was so clear in the *Phillips* case, I just don't see how the trial court can tread safely through this judicial minefield.

Further, these cases will require presentation of evidence concerning a myriad of highly individual facts, such as:

- the precise product(s) to which the plaintiff was exposed;

- the manner, conditions, and circumstances of each exposure;

- the dates, duration, and location of each exposure;

- the manner in which each alleged asbestos containing product was used;

- whether there was protective equipment available and actually used;

- the presence or absence of warnings included with the specific product(s) at issue; and

- each plaintiff's medical, family, and personal history, including such issues as whether and how much the plaintiff has used tobacco products, whether the plaintiff has experienced other occupational exposures to different substances (e.g., benzene, carbon tetrachloride, and coal dust) and the plaintiff's family health history.

The necessity of delving into such issues has been widely recognized by the courts. Given these individual issues, a mass trial—indeed, even small-group trials—would create a "Frankenstein's Monster" of the type postulated by the late Professor Charles Alan Wright. *Castano v. American Tobacco Co.*, 84 F.3d 734, 745 n. 19 (5th Cir.1996).

The suggestion in note 8 on page 27 of Mr. Farmer's brief is probably what we ought to do. He recommends: "If this Court wants to achieve a drastic and immediate reduction of the number of asbestos personal injury cases crowding the state's dockets, simply apply *lex loci delicti* and send the thousands of cases improperly filed here back to their correct jurisdictions." Also, due to the fact that the directives provided to the trial court in *State ex rel. Allman v. MacQueen*, 209 W.Va. 726, 551 S.E.2d 369 (2001), have not been fully implemented, I do not think we should have expressed "observations and cautionary concerns for the trial court's consideration and use." Instead, I would simply direct the trial court to proceed to resolve this "elephantine" mass of litigation in as efficient and effective manner as possible in accordance with the *Allman* directives. Then, if the concerns noted by the majority arise, they can be dealt with upon appeals taken from final orders.

I believe the majority opinion correctly denied extraordinary relief at this juncture in the litigation. However, in light of well-settled federal law, I fear that allowing every plaintiff who wishes to litigate a claim in West Virginia, even though he or she has no connection to this State, may violate the defendants' due process rights.

Notwithstanding the foregoing, there is another side to this issue which is equally thorny and troubling. If this mass litigation is simply halted, clearly all the plaintiffs would be denied their due process rights and their day in court. There should be a simple answer that would guarantee everyone's due process rights, but I cannot conceive or fashion one.

Accordingly, I concur in the final result.