DECISION
Before this Court are Defendant Union Carbide Corporation's ("Defendant") Motion To Dismiss for Forum Non Conveniens and a Motion To Apply Foreign Law made by Defendant and several other joining Defendants (collectively "Defendants").[1] Jurisdiction is pursuant to G.L. 1956 § 8-2-14.
 I Facts and Travel
Carlie Asbury ("Ms. Asbury") is a sixty-three year old woman who was diagnosed with mesothelioma in March 2006. She was born in Iowa in 1947, where she remained until moving to Colorado in 1969. Ms. Asbury and her husband, Thomas Asbury, (collectively "Plaintiffs"), married in Colorado in 1971 and lived there together until 1976. Plaintiffs subsequently lived in California, Kansas, Alabama, and Wyoming. They currently reside in Arizona.
Plaintiffs allege that Ms. Asbury was exposed to asbestos in Iowa, Colorado, and Wyoming. While living in Iowa, Ms. Asbury states that she came into contact with asbestos during the construction of her parents' Iowa home and in her father's tractor repair shop. From 1950 through 1964, Ms. Asbury swept the floor of the shop and disposed of dust and debris after *Page 2 
her father's mechanics completed tractor brake work and other repairs. Ms. Asbury alleges that the dust and debris contained asbestos fibers, which she inhaled and contributed to her disease. In Colorado, Ms. Asbury alleges she was exposed to asbestos at two large municipal construction sites that she visited over 150 times each and from the building materials she personally used to construct an office in the basement of her Colorado home. With respect to the state of Wyoming, Ms. Asbury submits that she came into contact with asbestos during multiple tours of the construction site for the Asbury's house in Laramie, Wyoming. Since her diagnosis in 2006, Ms. Asbury has received treatment for mesothelioma in Texas and Alabama.
On May 8, 2007, Plaintiffs filed a lawsuit in Rhode Island against thirty Defendants who allegedly designed or used products containing asbestos and who allegedly failed to warn consumers of the hazardousness of their products. Plaintiffs contend that Ms. Asbury was exposed to Defendants' products over the course of fourteen years in Iowa, two years in Colorado, and for about a year in Wyoming. On January 4, 2010, Union Carbide Corporation moved to dismiss Plaintiffs' case on forum non conveniens grounds. On January 8, 2010, Union Carbide Corporation and several other joining Defendants filed another motion requesting that this Court apply Colorado law to this case. Plaintiffs opposed both motions. This Court afforded the parties an opportunity to be heard on January 13, 2010.
 II Forum Non Conveniens
Defendant Union Carbide Corporation argues, based on Kedy v.A.W. Chesterton, 946 A.2d 1171 (R.I. 2008), that this Court should dismiss Plaintiffs' case for forum non conveniens. Briefly, Defendant asserts that Colorado is an available and adequate forum and that the weight of the public and private interest factors strongly favor Colorado, rather than Rhode Island. Plaintiffs counter that the doctrine of forum non conveniens
is grounded in fundamental fairness, *Page 3 
which gives this Court significant discretion to grant or deny a motion to dismiss. Plaintiffs remind this Court that Defendant carries a heavy burden of persuasion for dismissal and of the overarching rule that an American plaintiff's legitimate forum choice should rarely be disturbed. Plaintiffs agree that some private and public factors do favor Defendant, but that on the whole, Defendant has not carried its sizeable burden.
 A Kedy and Forum Non Conveniens 1 Standard of Review
The doctrine of forum non conveniens allows "a court [to] resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute."Kedy, 946 A.2d at 1178 (quoting Gulf OilCorp. v. Gilbert, 330 U.S. 501, 507 (1947)). The doctrine is "founded in considerations of fundamental fairness and sensible and effective judicial administration" and may be used by the trial courts to achieve the "orderly and expeditious disposition of cases." Id. at 1179, 1180 (citations omitted). Essentially, "a court may decline to exercise jurisdiction when the plaintiff's chosen forum is significantly inconvenient and the ends of justice would be better served if the action were brought and tried in another forum." Id. at 1178. A finding of "significant inconvenience" requires a trial court to establish either that "trial in the chosen forum would `establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience' or [that] the `chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems.'" Id. at 1182-83 (quoting American DredgingCo. v. Miller, 510 U.S. 443, 447-48 (1994)). A trial court is afforded "much discretion" to grant or deny a motion for dismissal for forum non conveniens, and this decision is reviewed under an abuse of discretion standard. Id. at 1185-86. As long as a court balances the relevant public and private factors reasonably, its decision regarding forum *Page 4 non conveniens will be upheld. Id. at 1186 ("[W]here the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." (quoting Piper AircraftCo. v. Reyno, 454 U.S. 235, 257 (1981))) (internal quotation marks omitted).
 2 Applicable Law
The threshold inquiry of any forum non conveniens analysis requires the trial court to confirm that jurisdiction and venue in the present forum are proper. Id. at 1183. The instant Defendant has not challenged jurisdiction or venue in this matter, nonetheless, this Court does find that jurisdiction is proper pursuant to § 8-2-14 and that venue is proper pursuant to G.L. 1956 § 9-4-5.
After crossing the forum non conveniens threshold, the trial court next entertains a two-pronged analysis to determine whether dismissal is nonetheless appropriate. Kedy, 946 A.2d at 1184. "First, the court must decide whether an alternative forum exists that is both available and adequate to resolve the disputed legal issues. . . . Second, the court must determine the inconvenience of continuing in the plaintiff's chosen forum by weighing private-and public-interest factors." Id. Kedy directs trial courts to examine all private-and public-interest factors and does not put "central emphasis . . . on any one private-or public-interest factor." Id. at 1184.
In evaluating the first prong — the availability and adequacy of an alternative forum — a court queries whether "the defendant is amenable to process in the other jurisdiction,"id. at 1183 (quoting Piper Aircraft Co.,454 U.S. at 255 n. 22), and then verifies that the new forum is not "so clearly inadequate or unsatisfactory that it is really no remedy at all." Id. at 1184 (quoting PiperAircraft Co., 454 U.S. at 254). A forum that offers "no remedy" literally means none. A plaintiff's preferences for a jurisdiction with greater potential damage awards, simpler discovery, *Page 5 
or faster trial dates are not sufficient inadequacies to thwart dismissal to an alternative (but more convenient) forum.Id. As long as the inquiring court determines that the defendant may be haled into court in the alternate forum and that new forum offers some, albeit not equivalent, relief, then the moving defendant will prove the first prong.
The second prong in the Kedy test requires the court to balance the private and public interest factors with respect to each party. Id. at 1184. To analyze the private-interest factors, a court evaluates a non-exhaustive list of considerations including "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining the attendance of willing witnesses; (4) the possibility of view[ing the] premises, if view would be appropriate to the action; (5) all other practical problems that make the trial of a case easy and inexpensive; (6) the enforceability of a judgment in the alternative forum; and (7) the advantages and obstacles to a fair trial."Id. at 1184-85 (quoting Gulf Oil Corp.,330 U.S. at 508) (numbering added).
The public-interest factors encompass (1) administrative difficulties when "litigation is piled up in congested centers instead of being handled at its origin"; (2) the burden of jury duty "imposed on people of a community which has no relation to the litigation"; (3) the "local interest in having localized controversies decided at home"; (4) the interest of the community in seeing a trial that affects many held "in their view and reach rather than in a remote part of the country"; and (5) the appropriateness of having a trial in a forum that is "at home with the state law that must govern the case, rather than having a court in some other forum untangle [another forum's laws]."Id. at 1185 (quoting Gulf Oil Corp.,330 U.S. at 508-09) (numbering added).
Overarching the two prongs in the forum non conveniens
analysis is the strong deference a court gives to a plaintiff's initial choice of forum and the heavy burden a defendant shoulders *Page 6 
when persuading a court that a case should be dismissed. Our Supreme Court in Kedy clearly stated that dismissal requires "the plaintiff's chosen forum [to be] significantly inconvenient and the ends of justice . . . better served if the action were brought and tried in another forum." Id. at 1178. As such, a "defendant invoking forum non conveniens ordinarily bears a heavy burden in opposing the plaintiff's chosen forum[,]"id. at 1183 (quoting Sinochem Int'l Co. v. Malaysia Int'lShipping Corp., 549 U.S. 422, 430 (2007)), and "carries the burden of persuasion at each stage of the forum non conveniens inquiry [.]" Id.
Though courts do consider whether the plaintiff has selected its home state as the forum for its lawsuit, the fact that the plaintiff does not select its domicile does not require a trial court to afford the forum choice no deference. See,e.g., Gates Learjet Corp. v. Jensen,743 F.2d 1325, 1335 (9th Cir. 1984) (quoting Piper AircraftCo., 454 U.S. at 265) (explaining "that a plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum"); Quixtar Inc. v. Signature Mgmt. Team, LLC,566 F. Supp. 2d 1205, 1207 (D. Nev. 2008) (collecting cases and stating that "some courts have afforded less deference to a plaintiff's choice of forum where the plaintiff has not chosen its home forum"). In fact, the United States Court of Appeals for the First Circuit has emphasized that "a heavy presumption weighs in favor of [a U.S. citizen plaintiff's] initial forum choice" and acknowledged the existence of a "strong presumption favoring the American forum selected by American plaintiffs." Adelson v.Hananel, 510 F.3d 43, 53 (1st Cir. 2007) (emphasis added). The Rhode Island Supreme Court similarly noted that "[o]ur courts in Rhode Island must stand open to provide remedies to those who have been injured and to treat all litigants fairly" and that products-liability litigation can "transcend geographical boundaries" while being mindful that "courts need not resolve disputes of all persons who choose to file suit in Rhode Island." Kedy, 946 A.2d at 1188-89. To resolve this *Page 7 
tension, the more crucial question beyond whether the plaintiff has selected its home state, is whether it "appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid [such as convenience and expense.] [If the choice was for valid reasons,] the greater the deference [a court will give] to the plaintiff's forum choice." Iragorri v.United Technologies Corp., 274 F.3d 65, 71-72 (2d Cir. 2001);see also Kedy, 946 A.2d at 1185 (stating that "forum choice [that] appears to be based on legally valid reasons such as convenience and expense" also justifies deference to the chosen forum).
Finally, in its discretion to decide the outcome of a forum nonconveniens motion, a court may note other unenumerated matters of convenience, cost, and preservation of scarce judicial resources. For example, "whenever discovery in a case has proceeded substantially so that the parties already have invested much of the time and resources they will expend before trial, the presumption against a forum non conveniens dismissal greatly increases."Lony v. E.I. Du Pont de Nemours Co.,935 F.2d 604, 614 (3d Cir. 1991); see also Mercier v. SheratonInt'l, Inc., 981 F.2d 1345, 1356-57 (1st Cir. 1992) (citingLony with approval and stating that more litigation activity that has taken place in a case, the more deference that is given to plaintiff's current forum); Lacey v. Cessna Aircraft Co.,849 F. Supp. 394, 398 (W.D. Pa. 1994) (denying the "motion to dismiss under the doctrine of forum non conveniens . . . in light of the completion of discovery, filing of pretrial statements, and potential duplication of extensive discovery if the case were heard in British Columbia"). A court may also consider the health of the parties in examining the fundamental fairness of denying or granting a motion to dismiss for forum non conveniens. SeeSystemation, Inc. v. Engel Indus., Inc.,992 F. Supp. 58, 63 (D. Mass. 1997) (holding that "the [plaintiff's] choice of forum is to be given a degree of deference . . . [and here] reasonableness tips sharply in [plaintiff's] favor[.] [The plaintiff-inventor] is 85 years old and in *Page 8 
failing health"); Ex parte Ford Motor Credit Co.,772 So. 2d 437, 444-45 (Ala. 2000) (remanding to the trial court to consider whether the alleged change in a plaintiff's medical condition affects the reasonableness of dismissing for forum nonconveniens).
 B Kedy's Application to the Instant Facts
Pursuant to its rulings in Downs v. 3M Co., nos. 06-1710, 07-6435, 2010 WL 85176 (R.I. Super. Ct. Jan. 5, 2010), this Court "declines to lay down a `rigid rule'" regardingforum non conveniens. Instead, this Court shall "evaluate each matter on a case-by-case basis." Id.
 1 Available and Adequate Forum
For the first prong of the forum non conveniens analysis, this Court agrees with Defendant that Colorado is an adequate and alternative forum. As a national corporation with significant contact to all fifty states, Defendant likely is "amenable to process" in Colorado. Kedy, 946 A.2d at 1183 (quotingPiper Aircraft Co., 454 U.S. at 255 n. 22). Alternately, this Court could "condition [] dismissal upon the [D]efendant's consent to submit to jurisdiction in" Colorado thereby maintaining the availability of that forum. Id. This Court also finds that the remedies in Colorado courts are not "so clearly inadequate or unsatisfactory that [they are] really no remedy at all."Id. at 1184 (quoting Piper Aircraft Co.,454 U.S. at 254). Though sympathetic to Plaintiffs' entreaty — that Colorado is not an adequate forum considering the seriousness of Ms. Asbury's condition and the possibility that the delay caused by dismissing and refiling in Colorado effectively could prevent Plaintiffs from bringing their case — this Court does not find these facts affect the adequacy of the Colorado forum. According to Kedy, "no remedy" literally means none at all, and a complete lack of remedy is not the situation Plaintiffs *Page 9 
present to this Court. Id.; see also Downs,2010 WL 85176 (finding that in an asbestos litigation, the Colorado forum satisfied Kedy's first prong as an available and adequate forum).
 2 Private Interest Factors
In its arguments for the Colorado forum, Defendant highlights that Ms. Asbury's injury, the majority of evidence, the properties in question, and the witnesses are all located in states other than Rhode Island. Defendant also emphasizes that this Court lacks the ability to compel out-of-state witnesses to appear in a Rhode Island courtroom. Defendant submits that keeping the instant case in Rhode Island will not make trial any easier, efficient, or less expensive on the whole. This Court agrees that private-interest factors (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses; and (5) all other practical problems that make the trial of a case easy and inexpensive all favor Defendant. This Court acknowledges that the majority of causation evidence for Plaintiffs' claims is located in Colorado, Iowa, and Wyoming and that holding this trial in Rhode Island will not especially simplify the logistics of presenting this case for the parties. Further, this Court recognizes that letters rogatory for out-of-state depositions are not substitutes for subpoenas.
However, this Court nonetheless finds that the majority of the private-interest factors do not "strongly favor" Defendant and therefore must weigh for Plaintiffs, specifically (3) the cost of obtaining the attendance of willing witnesses; (4) the possibility of viewing the premises, if view would be appropriate to the action; (6) the enforceability of a judgment in the alternative forum; and (7) the advantages and obstacles to a fair trial. As to the attendance of willing witnesses factor, this Court notes that unlike the situation in Kedy, the witnesses here are located within the continental United States (and are not all concentrated in Defendant's alternative Colorado forum) and that "no forum [is] as inconvenient (today) as it was in 1947 [when the *Page 10 
seminal forum non conveniens case Gulf OilCorp. v. Gilbert was decided]." Manu Int'l v. Avon Prods.,Inc., 641 F.2d 62, 65 (2d Cir. 1981) (quoting Fitzgerald v.Texaco, Inc., 521 F.2d 448, 457 (2d Cir. 1975)). Considering that Kedy acknowledged that advancements in technology have made travel far less necessary and have reduced the expense to litigants, Kedy, 946 A.2d at 1188-89, this Court agrees with the "recent sentiment . . . [of] evaluating the forum non conveniens factors in light of the increased speed and ease of travel and communications, especially when a key issue is the location of witnesses." Manu Int'l v. Avon Prods., Inc., 641 F.2d at 65. As such, this Court finds that holding trial in this forum will not create unduly burdensome costs for Defendant to utilize itswilling witnesses.
Similarly, this Court believes that viewing the premises where Ms. Asbury was exposed to asbestos, if necessary, can be accomplished using modern technology. Photography and videography, two media advancements that have become extremely commonplace in our society, are sufficient to overcome the distance between Rhode Island and the three Midwestern states where Ms. Asbury allegedly encountered Defendant's asbestos-containing materials. Accordingly, this Court finds that the fourth private-interest factor favors Plaintiffs.
Finally, this Court is not persuaded that a Rhode Island verdict will lack enforceability in Colorado or that Defendant will not receive a fair trial in this jurisdiction. Unlike Kedy, where the Canadian forum could be not bound by our United States Constitution's Full Faith and Credit Clause, Colorado is constitutionally obliged to uphold any judgments rendered in this Court. See Goetz v. LUVRAJ, LLC,986 A.2d 1012, 1017 (R.I. 2010) ("Under the full faith and credit clause [of the United States Constitution], a state court must enforce and give effect to a judgment of a court of a sister state, provided, upon inquiry, the court is satisfied that its sister court properly exercised . . . in personam jurisdiction." (quotingMd. Central Collection Unit v. *Page 11 Bd. of Regents for Education of the Univ. of Rhode Island,529 A.2d 144, 152-53 (R.I. 1987))). Further, there is no indication that maintaining Plaintiffs' case in this forum will create a situation where Defendants will not receive a fair trial. By its very nature, litigation is inconvenient to defendants, but suit in Rhode Island would not make this litigation's inconvenience so out-of-proportion as to rise to the level of vexatiousness upon the instant Defendant. See Kedy, 946 A.2d at 1183. As such, private-interest factors (6) and (7) also favor the Plaintiffs.
 3 Public Interest Factors
As to the public factors, Defendant argues that Plaintiffs' case has no relation to Rhode Island to justify burdening the State with jury service or using the State's judicial resources. In addition, Defendant predicts that foreign law will apply in this matter, which will add another dimension to hearing Plaintiffs' case in this Court. Overall, Defendant assesses that the instant case lacks a general nexus to Rhode Island, which invalidates this Court's interest in resolving the issues presented. This Court agrees that such factors — (2) the burden of jury duty "imposed on people of a community which has no relation to the litigation"; (3) the "local interest in having localized controversies decided at home"; and (4) the interest of the community in seeing a trial that affects many held "in their view and reach rather than in a remote part of the country" — favor Defendant in this case. Kedy, 946 A.2d at 1185. This Court is so persuaded considering that no events occurred in this State, nor are the parties domiciled here.
Nonetheless, this Court finds that the other two public-interest factors favor Plaintiffs' efforts to keep their case in the current forum. Namely, this Court is not swayed that administrative difficulties abound due to the active, but manageable asbestos docket. Id. As such, public-interest factor (1) weighs for Plaintiffs. In addition, regardless of whether foreign *Page 12 
law will apply to Plaintiffs' case, this Court is sufficiently capable of interpreting and applying another state's laws.Id. Untangling the laws that apply to this instant case is less problematic than the burden of translating laws in another language or based on an alternate judicial system — the issues this public-interest factor primarily seeks to address. See,e.g. Sun Trust Bank v. Sun International Hotels, Ltd.,184 F. Supp. 2d 1246, 1266 (S.D. Fla. 2001) (finding that the foreign law public interest factor did not weigh against the forum court from hearing the case where there were "no language barriers to the Court's understanding of Bahamian law and . . . Bahamian law is derived from English common law and has many similarities to Florida law"). Even Kedy acknowledged that "the likelihood that Canadian or other foreign law would apply in these cases would place additional, though notinsurmountable burdens upon our courts." Id. at 1188. Accordingly, factor (5) in the public-interest considerations also favors Plaintiffs. Though Defendant establishes some public-interest factors in support of the Colorado forum, this Court is hard pressed to find these "strongly" weigh in favor of dismissal.
 4 Deference to the Current Forum
This Court acknowledges that forum non conveniens analyses afford less deference when Plaintiffs, such as the within — whose current domicile is Arizona — have not filed their case in their home forum. However, courts afford significant deference to a Plaintiffs' first forum choice, as does this Court.Adelson, 510 F.3d at 53 (stating that "a heavy presumption weighs in favor of [a U.S. citizen plaintiff's] initial" choice) (emphasis added). The more vital, overall inquiry is whether Plaintiffs' forum choice was made with the purpose of forum shopping or with an intention to "vex, harass, or oppress the defendant."Kedy, 946 A.2d at 1185 (quoting Gulf Oil Corp.,330 U.S. at 508); see also Piper Aircraft Co. v. Reyno,454 U.S. 235, 257 n. 23 (1981) (stating that the forum nonconveniens analysis turns on whether "the balance of *Page 13 
conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, [in which case] dismissal is proper"). This Court finds that vexation or oppression was not Plaintiffs' design. Plaintiffs proffer compelling arguments for selecting the Rhode Island court system, including the asbestos litigation experience of this Court, the high rate of settlement, the effective resolution of cases, and the efficiency and speed with which they believe their matters will be heard. For these reasons, this Court is persuaded that Plaintiffs have brought their case to Rhode Island for legally valid reasons and finds that their forum choice should be weighted accordingly. SeeKedy, 946 A.2d at 1185.
In advocating for dismissal, Defendant also contends that Plaintiffs' pre-Kedy filing date is immaterial to this Court's decision-making process. While recognizing that simply filing before Kedy's pronouncement does not circumventforum non conveniens dismissal, this Court disagrees that the length of time this matter has been pending in this forum is irrelevant. The parties have completed significant pre-trial work and an involved procedural motion practice in this forum. To dismiss Plaintiffs' case at this juncture, essentially on the eve of trial, would be a paramount waste of judicial resources.Lony v. E.I. Du Pont de Nemours Co.,935 F.2d 604, 614 (3d Cir. 1991) ("[W]henever discovery in a case has proceeded substantially so that the parties already have invested much of the time and resources they will expend before trial, the presumption against a forum non conveniens dismissal greatly increases."); see also Mercier v. Sheraton Int'l,Inc., 981 F.2d 1345, 1356-57 (1st Cir. 1992) (stating that the more litigation activity that has taken place, the more deference that is given to plaintiff's current forum). Furthermore, this Court declines to completely overlook the serious health condition of Ms. Asbury and finds that fundamental fairness dictates that Plaintiffs' initial forum should receive deference in this regard. SeeSystemation, Inc. v. Engel Indus., Inc.,992 F. Supp. 58, 63 (D.Mass. 1997) *Page 14 
(giving deference to plaintiff's forum choice where "reasonableness tips sharply in [plaintiff's favor [where] the [plaintiff-inventor] is 85 years old and in failing health"). Overall, remaining in this forum to complete the final step in the litigation process makes significantly more sense in terms of convenience and preserving scarce judicial resources than requiring all parties to start anew in Colorado.
In addition to the deference afforded to Plaintiffs' initial forum choice and these other rational considerations, neither the private-nor public-interest factors weigh "strongly" in Defendant's favor. See Gulf Oil Corp., 330 U.S. 501 at 508 ("Unless the balance [of private-and public-interest factors] is strongly infavor of the defendant, the plaintiff's choice of forum should rarely be disturbed.") (emphasis added). Though Colorado is an available and adequate forum, Defendants have not met their heavy burden of persuasion here. As such, this Court denies Defendant's motion to dismiss for forum non conveniens, and Plaintiffs' case shall remain in Rhode Island.
 III Conflicts of Law
In their second motion, the moving Defendants argue that this Court should apply Colorado law because the laws of Rhode Island and Colorado conflict; and the state of Colorado bears the most significant relationship to the claim. Defendants present facts that Plaintiffs were Colorado residents for a number of years and that Ms. Asbury was allegedly exposed to asbestos in that state. Given the possible choices of law — Colorado advocated by Defendants and Rhode Island advocated by Plaintiffs — Defendants assert that Colorado is clearly the correct choice because Rhode Island has no connection to the suit save that it is the forum selected by Plaintiffs. Defendants maintain that applying Rhode Island law to this suit would violate the Defendants' constitutional rights to Due Process and Equal Protection and the Full Faith and Credit clause. *Page 15 
Conversely, Plaintiffs contend that based on the pathology of asbestos diseases, [2] no state is properly deemed the place of Ms. Asbury's injury. As such, Plaintiffs purport that Rhode Island law — as the forum where the Plaintiffs properly filed their suit and as a forum having a strong governmental interest in resolving a case that implicates issues of national import — should apply to these claims. Although Ms. Asbury allegedly was exposed to asbestos in Iowa and Wyoming as well, neither party advocates for the application of either Iowa's or Wyoming's laws. As such, Plaintiffs suggest that Defendants are "cherry picking" Colorado law from a list of viable forums.
 A Constitutionally Minimum Connection
At the outset, this Court notes that "the deference accorded a plaintiff's choice of forum has never been intended to guarantee that the plaintiff will be able to select the law that will govern the case." Piper Aircraft Co. v. Reyno,454 U.S. 235, 256 n. 24 (1981). Instead, in Rhode Island, courts use an interest-weighing approach to determine the appropriate law to apply when several states have an interest in a matter and have conflicting laws. Oyola v. Burgos,864 A.2d 624, 627 (R.I. 2005) (citing Woodward v. Stewart,104 R.I. 290, 299-300, 243 A.2d 917, 923 (1968)). Applying this approach, courts decide which "state `bears the most significant relationship to the event and the parties.'" Najarian v. Nat'lAmusements, Inc., 768 A.2d 1253, 1255 (R.I. 2001) (quotingCribb v. Augustyn, 696 A.2d 285, 288 (R.I. 1997)). As a threshold matter, however, this Court must reconcile the possibility of using an interested state's law with the Full Faith and Credit, Due Process, and Equal Protection clauses of the Federal Constitution. See Roy v. Star Chopper Co., Inc.,584 F.2d 1124, 1128 (1st Cir. 1978) (applying Rhode Island *Page 16 
conflicts of law rules and stating that "[p]rior to applying these [choice of law] guidelines, the court must first determine (a) whether there are sufficient contacts with each of the states so as to make application of either state's law constitutionally permissible, and (b) what the nature of the conflict between the laws of those states []").
Specifically, Defendants assert that this Court cannot even consider applying Rhode Island law using the interest-weighing analysis without first establishing that this forum has "some rational basis for applying its own laws to a tort or injury which occurred in a foreign jurisdiction and which is being litigated in the forum." Woodward, 104 R.I. at 295, 243 A.2d at 921;see generally Restatement (Second) Conflict ofLaws § 2 cmt. b. Defendants state that Rhode Island law lacks such a basis with the instant case under Woodward or the Supreme Court of the United States's more recent expression of this constitutional issue in Phillips Petroleum Company v.Shutts, 472 U.S. 797 (1985). This Court agrees.
In Woodward — our jurisdiction's only articulation of the constitutional issues embedded in conflicts-of-law questions — the Rhode Island Supreme Court did not explicitly describe what gives a state "rational basis" to apply its law to a matter. 104 R.I. at 296, 243 A.2d at 921 ("The full faith and credit, due process, and equal protection clauses of the federal constitution still require that the forum have some rationalbasis for applying its own laws to a tort or injury which occurred in a foreign jurisdiction and which is being litigated in the forum.") (emphasis added). At the same time, Woodward
requires that an applicable law's forum must have at least someactual contact with the claim. In Woodward, our Supreme Court explored applying Massachusetts law — where the car accident occurred — or Rhode Island law — where the plaintiffs were domiciled and where the fatal car trip originated and planned to terminate. 104 R.I. at 300, 243 A.2d at 924. Though leaving to the trial court the final decision of which law to *Page 17 
apply, Woodward instructs that a choice of law forum must have some contact with the claim in order to pass constitutional muster and before a court may proceed to the interest-weighing analysis. 104 R.I. at 296, 243 A.2d at 921. In the instant case, Rhode Island clearly is not the domicile of any party, nor is it one of the places of injury, nor does it have any other connection to Plaintiffs' case. As such, per Woodward, Rhode Island law does not have a rational basis for applying its laws in this matter and therefore is not a constitutionally appropriate choice.
Likewise, Shutts instructs that "for a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair.'"472 U.S. at 818 (quoting Allstate Ins. Co. v. Hague,449 U.S. 302, 312-13 (1981)). Shutts involved a class action of 28,000 natural gas company investors representing all 50 states, the District of Columbia and some foreign countries in a dispute over royalties for gas extracted from leased land to which the 28,000 investors had an interest. Id. at 799. The leased land plats were located in eleven states including Kansas, with the most significant number of plats in Texas and Oklahoma.Id. at 816. The suit was filed in Kansas, where the state court certified a class. Id. at 799. The state court applied Kansas law to all 28,000 consolidated claims regardless of where the land, lease, or class action plaintiff was located.Id. at 815-16. This application resulted in the court's applying Kansas law to every single claim even if the law was in direct contravention to the law where the leased land wasactually located. Id. at 822. In reversing, the Supreme Court of the United States held that this application of choice of law violated the Constitution. Id. ("Given Kansas's lack of `interest' in claims unrelated to that State, and the substantive conflict with jurisdictions such as Texas, we conclude that application of Kansas law to every claim in this case is sufficiently arbitrary and unfair as to *Page 18 
exceed constitutional limits."). The Shutts Court reasoned: "there is no indication that when the leases involving land and royalty owners outside of Kansas were executed, the parties had any idea that Kansas law would control." Id. While the Court noted that some of the class action plaintiffs were Kansas residents or had invested in Kansas land and that "gas extraction [wa]s an important business to Kansas," that state's relation tosome of the claims was not enough to justify applying Kansas law to all other claims that originated in states other than Kansas where it was clear that another state's law should apply. Id. at 820.
Unlike Shutts which contrarily was a class action with 28,000 separate claims, the instant case involves oneindivisible claim emanating from Ms. Asbury's cumulative contact with asbestos in several states. In Shutts, applying the state law where the leased land was located and where the parties knew their interests were centered was the appropriate choice for each separate lease claim. However, as with the application of Kansas law to the Texas and Oklahoma gas leases inShutts, Rhode Island law likewise has no connection to Ms. Asbury's Iowa, Colorado, or Wyoming injuries, her treatment, or either Plaintiff's domicile. In effect, Rhode Island's contact to Plaintiffs' case — besides its existence as a legitimate forum where this matter was filed — is limited to a generalized interest "in preventing asbestos-related diseases," an interest "that is constant throughout the entire United States and beyond." Kedy v. A.W.Chesterton Co., 946 A.2d 1171, 1188 (R.I. 2008). This generalized interest is not enough to survive Shutts's orWoodward's explanation of the constitutional floor for a conflicts-of-law forum's contact to a claim.
This Court notes Plaintiffs' reliance on this Court's earlier decision in Barger v. Pratt and Whitney,2006 WL 2988458 at *3 (R.I. Super. Oct. 19, 2006), to show that Rhode Island law applies if there is asbestos exposure in multiple states. In Barger, the Tennessee law proponents *Page 19 
could not show that Tennessee had the most significant relationship to the claims as compared to the many other states with an interest, and this Court applied Rhode Island law. This Court so ruled inBarger, however, prior to this jurisdiction's recognition of the forum non conveniens doctrine in Kedy and our Supreme Court's pronouncement therein. The Kedy Court explained: the trial "literally ha[d] no connection to Rhode Island besides a generalized interest that is constant throughout the entire United States and beyond, viz, the interest in preventing asbestos-related diseases[]" and recognized of the "likelihood that . . . foreign law would apply in these [asbestos] cases." Kedy, 946 A.2d at 1188. This Court is now guided byKedy with respect to its forum non conveniens and analogously its choice of law analyses.[3] *Page 20 
Finally, with respect to choice of law, this Court further finds instructive the concurrence in MobilCorp. v. Gaughan — an asbestos litigation with multiple parties. 565 S.E.2d 793, 795 (W.Va. 2002) (J. Maynard, concurring). The concurring justice noted in Mobil Corp. v. Gaughan, "The United States Supreme Court has established that, as a matter of due process, a state cannot categorically apply its substantive law to govern claims in which a state has little or no interest. . . . Because so many of the plaintiffs have NO connection whatsoever with West Virginia, and because the United States Supreme Court was so clear in the Phillips case, I just don't see how the trial court can tread safely through this judicial minefield."Id.
As such, this Court removes Rhode Island law — with its one insufficient, generalized contact — from consideration in the instant conflicts-of-law analysis. This Court also declines to apply Colorado law by default and now turns it attention to the interest-weighing analysis to determine which substantative law of the three states where Ms. Asbury allegedly contacted asbestos shall control in this matter.
 B Interest-Weighing Analysis
A motion justice need not engage in a choice-of-law analysis when no conflict-of-law issue is presented to the court.National Refrigeration, Inc. v. Standen Contracting Co.,Inc., 942 A.2d 968, 973 (R.I. 2008); see also Barron v. FordMotor Co. of Canada, Ltd., 965 F.2d 195, 197 (7th Cir. 1992) (applying Florida law and warning that "before entangling itself in messy issues of conflict of laws, a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states."); Gregory v. Beazer East,892 N.E.2d 563, 578 (Ill. App. 2008) ("A choice-of-law determination is required only when a difference in law will make a difference in the outcome of a cause."). This Court acknowledges that Defendants have advised this Court of the evident conflict of laws between Rhode Island and Colorado, including the *Page 21 
significant differences in the apportionment of damages among defendants, the availability of a cap on non-economic and punitive damages, and the calculation of interest in a civil action.[4]
However, the parties have not explained whether any other interested forum[5] — most importantly Iowa — has conflicting laws with this jurisdiction or Colorado.[6] *Page 22 
Because jurisdiction and venue are proper in Rhode Island, this state's choice of law provisions shall apply. Gordon v. CliffordMetal Sales, Co., 602 A.2d 535, 537 (R.I. 1992). As stated above, Rhode Island courts use an interest-weighing approach to determine which law to apply when several states have an interest in a matter.See Oyola v. Burgos, 864 A.2d 624, 627 (R.I. 2005) (citingWoodward, 104 R.I. at 299-300, 243 A.2d at 923);Najarian v. Nat'l Amusements, Inc.,768 A.2d 1253, 1255 (R.I. 2001) (explaining that the interest-weighing approach determines the "state [that] `bears the most significant relationship to the event and the parties.'" (quoting Cribb v. Augustyn, 696 A.2d 285, 288 (R.I. 1997))). The "[f]actors which must be weighed in determining which law applies are (1) predictability of result; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law."Najarian, 768 A.2d at 1255 (quoting Pardey v. BoulevardBilliard Club, 518 A.2d 1349, 1351 (R.I. 1986)).
Specifically in a tort case, determining the forum with the most significant relationship to the claims requires a court to evaluate the following contacts: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered."Brown v. Church of Holy Name of Jesus,105 R.I. 322, 326-27, 252 A.2d 176, 179 (R.I. 1969); seealso Restatement (Second) Conflict ofLaws § 145 (1971). Essentially, "[i]n an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties,unless, with respect to the particular issue, some other state has a more significant relationship, . . *Page 23 
. in which event the local law of the other state will be applied." Restatement (Second) Conflict ofLaws § 146 (1971); see also Najarian,768 A.2d at 1255 (internal citations omitted). It follows that although lex loci delicti[7] no longer applies in this jurisdiction, the place where the injury occurred often is the forum bearing the most significant relationship to the case and therefore is the proper choice of law. Id.; Restatement (Second)Conflict of Laws § 146 ("The likelihood that some state other than that where the injury occurred is the state of most significant relationship is greater in those relatively rare situations where, with respect to the particular issue, the state of injury bears little relation to the occurrence and the parties."). This outcome usually satisfies another critical consideration in choice of law questions: whether applying a certain forum's law meets the reasonable expectations of the litigants. Najarian,768 A.2d at 1255. Arguably, using the law of the place where the injury occurred is reasonably expected.
 1 Application of Tort Specific Interest-WeighingFactors a Place Where Injury Occurred and Place Where Conduct Causing the Injury Occurred[8]
In tort cases, the place of personal injury is a critical, if not the most important, consideration for a court when deciding which forum's law will control. See Restatement (Second)Conflict of Laws § 146 (1971); see also Byers v. LincolnElec. Co., 607 F. Supp. 2d 840, 847 (N.D. Ohio 2009) ("[I]n tort cases involving personal injuries, the place of injury is *Page 24 always important.") (emphasis added). However, as noted by Plaintiffs, asbestos diseases are not typical injuries because the place of actual harm is not easily ascertained. Mesothelioma and its related illnesses are, by their very nature, caused by cumulative exposure to asbestos over one's lifetime. It is nearly impossible for medical professionals, never mind this Court, to make a final judgment where Ms. Asbury's injury-causing exposure or ultimate injury occurred. See Borel v. Fibreboard Paper ProductsCorp., 493 F.2d 1076, 1083 (5th Cir. 1973) ("A worker's present condition is the biological product of many years of exposure to asbestos dust, with both past and recent exposures contributing to the overall effect. All of these factors combine to make itimpossible, as a practical matter, to determine which exposure or exposures to asbestos dust caused the disease.") (emphasis added). Ms. Asbury recounts fourteen years of sporadic contact with asbestos in Iowa, two years in Colorado and one year in Wyoming. Arguably, any one of these locations could have been the location where Ms. Asbury inhaled the single asbestos fiber that was the break-point impetus for her injury.
With regard to this place of injury factor, the Defendants present this Court with Byers v. Lincoln Elec. Co.,607 F. Supp. 2d 840 (N.D. Ohio 2009), a Multi-District Litigation (MDL) involving the plaintiff's inhalation in fifteen states of manganese welding fumes, which eventually caused his neurological disability. Id. at 843-44. In Byers, the district court applied Ohio's choice of law method, which is the same "most significant relationship" approach adopted by this jurisdiction.Id. at 844. However, this cited case does not necessarily indicate Colorado law should control the instant matter despite Defendants' urging. Without a doubt, this Court agrees with theByers Court's finding falsity in the statement that "the place of injury is important only when the injury occurred in a single state" or that "the place of injury factor is *Page 25 
inapplicable" if the cause of injury occurs in multiple states.Id. at 847.[9] This Court acknowledges that "in tort cases involving personal injuries, the place of injury is always
important[,]" but in Byers there was a clear cut winner in the battle for which state was the strongest contributor to that plaintiff's injuries. Id. Most of the fifteen states where the Byers plaintiff was exposed to welding fumes provided short-lived experiences. Id. However, because "Byers spent 20 years living and working in Texas, [] the vast majority of his welding jobs during that time were also in Texas, [and] the `smokiest jobsites' he worked were in Texas, . . . it [wa]s safe to say that, while there may have been several `places of injury,' the most substantial locus of the personal injury that Byers allegedly suffered [wa]s Texas." Id. Essentially, Byers held that the place of injury is the "state where the plaintiff performed a more substantial amount (if not an outright majority) of his welding, as compared with anywhere else." Id. at 853. This Court notes that welding fume and asbestos injuries are both caused by cumulative exposures and is persuaded that the same evaluation of place injury may be applied in the instant case. *Page 26 
As such, despite Defendants' argument that Byers supports the application of Colorado law in the instant case, Defendants do not completely convince this Court. Plaintiffs moved residences frequently, and if Ms. Asbury's asbestos injuries are based on length or intensity of exposure, Ms. Asbury's longest exposure to asbestos containing products was not in Colorado (or Wyoming). The state of Colorado accounts for only two years of alleged asbestos exposure from occasional construction site "walk-throughs" and two to three months of using potentially-asbestos-containing construction materials in the Asbury home office. Ms. Asbury's alleged contact with asbestos in Wyoming was even less significant than that of Colorado. Rather, the longest and arguably the most intense alleged exposure to asbestos was in Iowa — a place where Ms. Asbury spent fourteen years personally sweeping up tractor brake debris. See, e.g., Byers,607 F. Supp. 2d at 847 (holding that the place with the longest time period of manganese welding fume exposure "pointed strongly" to finding that it was place of injury).
Although Iowa is not a choice of law specifically urged by either party, this Court is not constrained to examine only the advocated forums when determining which state has the most significant relationship to this case. See Townsend v. Sears, Roebuck andCo., 879 N.E.2d 893, 898 (Ill. 2007) (stating that "the task of evaluating and balancing the choice-of-law principles embodied in the Second Restatement, as they apply to the facts, is a matterof law rather than fact and one that is more properly left tothe judge") (emphasis added); see also Danziger v. Ford MotorCo., 402 F. Supp. 2d 236, 240 (D.D.C. 2005) (examining all "potentially interested states," including those not urged by the parties, before determining that four of the states had "insufficient interest to affect the [choice of law] analysis")[10]; Lindhorst v. Avemco Ins. Co.,636 F. Supp. 868, 871 n. 3 (E.D. Mo. 1986) *Page 27 
("The Court pointed out the conflicts question to the parties and directed supplemental briefs on the choice of law question" as between the laws of Missouri, Illinois or Tennessee.);Barbara's Sales, Inc. v. Intel Corp.,879 N.E.2d 910, 922-23 (Ill. 2007) (although interlocutory appeal constrained the court from selecting law other than from California or Illinois, the court still considered that "named plaintiffs' lawsuit presents us with the majority of contacts in Illinois, while also providing contacts in Missouri, Delaware, California, and possibly Texas" and analyzed all states with conflicting laws using "most significant relationship" approach).[11] It is well settled in this jurisdiction that "under the interest-weighing approach, this Court will determine which state `bears the most significant relationship to the event and the parties.'" Taylor v. Mass. Flora Realty, Inc.,840 A.2d 1126, 1128 (R.I. 2004) (quoting Najarian,768 A.2d at 1255)) (emphasis added).
As there are other factors to consider, the place of the injury and the place where conduct caused the injury do not end the interest-weighing inquiry for this Court. Going forward, this Court observes that Colorado was but one of the three locations where Ms. Asbury was allegedly exposed, but declines to settle its forum choice of law decision on the first two factors alone.See Woodward, 104 R.I. at 297, 243 A.2d at 922 ("The clear import of the line of cases adopting the *Page 28 
rule of flexibility, however, is that a forum court is free to apply the substantive laws of a state, other than the locus, when it finds that such state has the significant interest in the outcome of those issues."); 16 Am. Jur. 2d Conflict ofLaws § 111 (stating that in the most significant relationship test, "the fact that a mathematically greater number of contacts occurs in one state, as opposed to another, therefore is not determinative of which state's law should be applied.").
 b The Domicile, Residence, Nationality, Place ofIncorporation and Place of Business of the Parties
"The fact that the domicile and place of business of all partiesare grouped in a single state is an important factor to be considered in determining the state of the applicable law." Restatement of the Law (Second) Conflict ofLaws § 145(2), cmt. e (emphasis added). This Court acknowledges that Plaintiffs are not currently domiciled in Wyoming, Iowa, or Colorado, nor are any Defendants incorporated in those states either. This Court finds that the Colorado forum is no larger a center of gravity for the parties than any of the other viable forums. The moving Defendants have an equal presence in and minimum contacts with each of these states. As such, this Court finds no justification to weigh Colorado law any more heavily for this factor than the two other states' laws and finds this factor inapposite. See La Plante v. American Honda Motor Co.,Inc., 27 F.3d 731, 741 (1st Cir. 1994) (applying Rhode Island choice of law principles and holding that Colorado did not weigh any more strongly than Rhode Island for this factor where the plaintiff and "none of the defendants [we]re domiciliaries of Colorado");see also Restatement of the Law (Second) Conflict ofLaws § 145(2), cmt. e ("[T]he importance of these contacts depends largely upon the extent to which they are grouped with other contacts. The fact, for example, that one of the parties is domiciled or does business in a given state will usually carry little weight of itself.") (emphasis added). *Page 29 
 c Place Where the Relationship, if Any, between the Parties Is Centered
The First Circuit has noted that in a products liability action "there being no `relationship' between the parties in the ordinary sense of the word, this factor is unhelpful in making a choice-of-law determination." La Plante, 27 F.3d at 741. Likewise, here, this Court finds no evidence of any actual, arms-length relationship between Plaintiffs and the moving Defendants. Ms. Asbury simply came in contact with asbestos inadvertently as a consumer or third party of Defendants' products.See Gregory, 892 N.E.2d at 583 (Ill. App. 2008) (finding that the fourth factor did not apply where "[plaintiff] did not deal with [defendant] personally but, rather, bought the product from nonparty retailers he could not remember."). As such, the fourth tort-specific factor is not useful to this Court's instant choice of law analysis.
 2 Application of General Interest-Weighing Factors
Again guided by the First Circuit's application of Rhode Island law, this Court acknowledges that "the resolution of choice-of-law problems may not always turn on the number of contacts, but rather, the qualitative nature of those contacts affected by the following factors: (1) predictability of results; (2) maintenance of interstate order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interest; and (5) application of the better rule of law." La Plante,27 F.3d at 741.
As to the first and second factors — the predictability of results and maintenance of interstate order — our Supreme Court inNajarian asserted that the place where the injury occurred should weigh strongly in favor of predictability in applying that forum's law. 768 A.2d at 1255. However, Najarian was a very straightforward personal injury case wherein the plaintiff fell inside a Massachusetts movie theater. Id. Because the patron-plaintiff and the movie theater *Page 30 
should have reasonably expected that an injury occurring in its Massachusetts theater would be governed by Massachusetts's premises liability laws, it was clear that those laws should apply.Id. Conversely, here, Plaintiffs were affected by asbestos in a number of different states. It does not follow that these national Defendants, who sell their products across the United States and in other countries, could have expected that Colorado law would apply to the exclusion of all other states where their products were available and where Ms. Asbury encountered them. See LaPlante, 27 F.3d at 742 (finding that "Honda, a large multi-national corporation, cannot argue convincingly that it expected Colorado law to apply to a case arising from a product manufactured in Japan and involving a Rhode Island citizen [who was injured when riding the ATV in Fort Carson, Colorado] simply because the product was originally sold in Colorado."). Accordingly, Defendants have not convinced this Court that the application of Colorado law in this case would be the most predictable result or especially maintain interstate order.
Examining the other general factors in the most significant relationship analysis, this Court acknowledges that applying Colorado law is not an insurmountable burden, but notes that applying the laws of Iowa or Wyoming are not any more insurmountable. This Court's choice of any one of the three viable forums' laws will not especially simplify its judicial task of applying foreign law. Furthermore, this Court finds that all of these foreign forums have a governmental interest in applying their laws to Plaintiffs' case because Ms. Asbury allegedly was exposed to a hazardous material in each jurisdiction. Finally, this Court finds that the better law consideration does not aid in this Court's instant analysis because Iowa, Colorado and Wyoming law are all viable, and none can be deemed "archaic or unfair." Hughes v.Wal-Mart, 250 F.3d 618, 621 (8th Cir. 2001) ("Courts often refrain from resolving a conflict of law question based on the better rule of law factor, recognizing that states often have competing policy considerations for *Page 31 
governing similar transactions or events in different manners such that the laws do not necessarily lend themselves to being labeled either `better' or `worse.'").
Because asbestos is a cumulative exposure disease, no state is unequivocally the place of Ms. Asbury's injury or the place where the conduct causing her injury occurred. However, given the alleged intensity and length of Ms. Asbury's exposure, this Court finds the scales tip slightly in favor of applying Iowa law over either Colorado or Wyoming. In considering the other interest-weighing factors, this Court finds that they do not provide much assistance in resolving the proper forum law choice. The moving Defendants cannot show that they would have expected Colorado law to apply over any of the other states' laws implicated in this case. Furthermore, though not insurmountable, selecting any of the three foreign laws does little to simplify this Court's role. Finally, all three states' governmental interests are furthered in applying their respective laws, and no law can be deemed better than the other two.
As such, based on the current submissions and arguments of the parties, this Court finds that the state with the "most significant relationship" to this case is Iowa. However, because neither party has specifically advocated for, or disapproved of, the application of Iowa's laws, this Court reserves judgment and invites the parties to explain why the application of Colorado or Iowa law is appropriate based on the interest-weighing, most significant relationship test. See Lindhorst,636 F. Supp. at 871 n. 3 ("The Court pointed out the conflicts question to the parties and directed supplemental briefs on the choice of law question" as between the laws of Missouri, Illinois or Tennessee); In re Arbitration Between Trans ChemicalLimited China Nat'l Mach. Imp. Exp. Corp.,978 F. Supp. 266, 276 n. 36 (S.D. Tex. 1997),aff'd, 161 F.3d 314 (5th Cir. 1998) ("Although there is no requirement that the court give formal notice to the parties of its intention to engage in its own research on an issue of foreign law that has been raised by them, or *Page 32 
of its intention to raise and determine independently an issuenot raised by them, if the court discovers material `diverging substantially' from that offered by the parties . . . it should inform them of this and give them an opportunity to react to thecourt's research.").
 III Conclusion
After careful consideration, this Court denies Defendant's Motion To Dismiss for Forum Non Conveniens. As to the joined Defendants' Motion To Apply Foreign Law, this Court reserves judgment and instead invites the parties to explain at oral argument and/or with supplemental memoranda why Iowa, Colorado, or another state's law is the correct choice of law for this case. The parties shall prepare a proper order reflecting this judgment.
[1] The moving Defendants for the Motion To Apply Foreign Law are Bondex International, Inc., CNH America LLC, Deere Co., Ford Motor Company, Georgia Pacific LLC, F/K/A Georgia Pacific Corp., Kaiser Gypsum Company, Inc., Navister, Inc., RPM International, Inc., Union Carbide Corporation, and United Gilsonite Laboratories.
[2] Mesothelioma is caused by cumulative exposure to asbestos over one's lifetime, which makes the ability to pinpoint a watershed causative exposure and/or singular place of injury nearly impossible. See infra.
[3] In referencing Kedy, this Court pauses to mention the differing burdens of persuasion between deciding conflicts-of-law questions and dismissing for forum non conveniens. SeeKedy, 946 A.2d at 1178 (establishing that the standard forforum non conveniens motions requires showing that "the plaintiff's chosen forum is significantly inconvenient and the ends of justice would be better served if the action were brought and tried in another forum" and that the "defendant invoking forum non conveniens ordinarily bears a heavy burden in opposing the plaintiff's chosen forum") (emphasis added). Furthermore, dismissing for forum non conveniens requires a trial court to find that "trial in the chosen forum would `establish oppressivenessand vexation to a defendant out of all proportion to plaintiff'sconvenience,'" Id. (quoting American DredgingCo. v. Miller, 510 U.S. 443, 447-48 (1994)) (emphasis added), whereas conflicts-of-law simply require a court to delineate the forum with the most significant relationship to the claim. Also, unlike forum non conveniens, which affords great deference to an American plaintiff's initial forum selection, choice of law analyses provide no such deference to Plaintiff's forumlaw selection. See Piper Aircraft Co. v. Reyno,454 U.S. 235, 256 n. 24 (1981) ("[T]he deference accorded a plaintiff's choice of forum has never been intended to guarantee that the plaintiff will be able to select the law that will govern the case."); Adelson v. Hananel,510 F.3d 43, 53 (1st Cir. 2007) (emphasizing that "a heavy presumption weighs in favor of [a U.S. citizen plaintiffs]initial forum choice" and "[the] strong presumption favoring the American forum selected by American plaintiffs") (emphasis added); Gregory v. Beazer East,892 N.E.2d 563 (Ill. App. 2008) (finding that Illinois was a proper forum, but holding that Indiana, the state with the most overall contact with the plaintiff's injury and domicile, was the proper law to apply). As such, though declining to apply RhodeIsland law to this case, this Court's decision cannotbe construed to suggest that Rhode Island is an improper orinconvenient forum for the parties. Seesupra.
[4] Rhode Island permits joint and several liability of joint tortfeasors, while Colorado holds defendants liable only to the percentage of their fault unless there is a conspicuous or deliberate conspiracy between tortfeasors. Compare Calise v.Hidden Valley Condo Ass'n, Inc., 773 A.2d 834, 840 (R.I. 2001)with Colo. Rev. Stat. § 13-21-111.5(1). In addition, Rhode Island does not cap non-economic damages, while Colorado does cap such damages. SeeColo. Rev. Stat. § 13-21-102;-102.5;-203. Similarly, Rhode Island does not cap punitive damages, while Colorado limits punitive damages to the amount of actual damages. SeeColo. Rev. Stat. § 13-21-102(a)(1); Fenwick v. Oberman,847 A.2d 852, 854-55 (R.I. 2004) (establishing that "[p]unitive damages are appropriate only in the rare circumstances when `a defendant's conduct requires deterrence and punishment over and above that provided in an award of compensatory damages[,]'" but that "trier of fact makes the ultimate determination of whether and to what extent such damages should be awarded" after the court makes the initial legal determination that punitive damages may be appropriate (quoting Palmisano v. Toth,624 A.2d 314, 318 (R.I. 1993))). Colorado also calculates interest differently than Rhode Island. CompareColo. Rev. Stat. § 13-21-101 (nine percent per annum compounded annually) with G.L. 1956 § 9-21-10.
[5] This Court notes that Texas and Alabama arguably have contacts with Plaintiffs' case because they are two locations where Ms. Asbury received medical treatments. However, this Court summarily dismisses these forums from the choice of law analysis. As discussedinfra, "in tort cases involving personal injuries, the place of injury is always important." Byers v. Lincoln Elec.Co., 607 F. Supp. 2d 840, 847 (N.D. Ohio 2009) (emphasis added). Considering Texas and Alabama were not places of injury and do not present some other "more significant relationship" with Plaintiffs' claims, this Court is not inclined to find these two states' laws to be more appropriate choices than those of Colorado, Iowa or Wyoming — states where Ms. Asbury actually encountered asbestos.See Restatement (Second) Conflict ofLaws § 146 (1971).
[6] A cursory examination of Iowa's laws indicates that there are conflicts among Iowa and Colorado and Rhode Island law. See IowaCode Ann. § 613.1 (allowing joint and several obligations in tort);Iowa Code Ann. § 668A.1 (allowing punitive or exemplary damages with some limitation on the amount, but not specifically limited to the extent of actual damages); IowaCode Ann. § 668.13 (interest for tort judgments "is the rate equal to the one-year treasury constant maturity published by the federal reserve in the H15 report settled immediately prior to the date of the judgment plus two percent."). But see IowaCode Ann. § 668.4 (in tort actions "the rule of joint and several liability shall not apply to defendants who are found to bear less than fifty percent of the total fault assigned to all parties. However, a defendant found to bear fifty percent or more of fault shall only be jointly and severally liable for economic damages and not for any non-economic damage awards.") Iowa also limits products liability of non-manufacturers and upholds state of the art defenses for certain members of the chain of manufacture.See Iowa Code Ann. § 613.18 (limited products liability defendants); 668.12 (available products liability defenses). Both statutes could affect the liability of some Defendants in the instant case. Colorado does not appear to retain similar laws on products liability.
[7] Lex loci delicti refers to the application of the "the law of the place where the tort or other wrong was committed."Black's Law Dictionary (8th ed. 2004). In abandoning lexloci delicti, the Rhode Island Supreme Court held that "the interest-weighing approach to conflict of law cases is indeed the better rule, and justice will be more equitably administered if the Rhode Island courts apply that rule to tort conflicts cases coming before them." Woodward, 104 R.I. at 299, 243 A.2d at 923.
[8] "[I]n a product liability case for failure to warn, the first factor [place of injury] and second factor [place of conduct causing injury] in a choice-of-law analysis are equivalent."Beyers, 607 F. Supp. 2d at 851.
[9] This Court pauses to note the case Gregory v. BeazerEast, 892 N.E.2d 563 (Ill. App. 2008), wherein that court held that "[i]n sum, we consider the first and second factors a wash, as both the injury and the injury-causing conduct are alleged to have occurred in more than one state (Indiana and Illinois)."Id. at 583. Though appearing to stand for the proposition that cumulative injury cases can ignore the place of injury factors altogether, the unique posture of this case distinguishes this statement. The Gregory Court expressly noted that "the list of [plaintiff's] work contained in the record confirms, from 1966 to 2005, the vast majority of [plaintiff's] employers, jobsites and, accordingly, source of income, were in Indiana," but the question on appeal was with regard to the choice of law for a single defendant, Georgia Pacific. Id. at 582-83. Because Georgia Pacific was one of the only defendants who did not settle and was still involved in the case at the time of trial, it became a much closer question where (as between Illinois and Indiana) the plaintiff had contacted Georgia Pacific materials that caused his injury. The much easier question of which state had the most significant relationship to his injury overall was not the question before the court. As such, the court could not establish these first two factors with certainty. Nonetheless,Gregory did determine that Indiana, the state with the most overall contact with the plaintiff's injury and domicile, was the proper law to apply. Id. at 585. Also of note inGregory, an Illinois court opted to apply foreign Indiana law in a case before its forum.
[10] In Danziger, the court applied the "modified governmental interest analysis," which is not the conflicts of law rule applied in this jurisdiction. Danziger v. Ford MotorCo., 402 F. Supp. 2d 236, 239 (D.D.C. 2005). However, "[w]hile the specific analysis adopted in the District of Columbia predates the 1971 publication of the Second Restatement['s interest-weighing, most significant relationship test], the two approaches are similar, and the D.C. Circuit has looked to the Restatement factors in applying D.C. [choice of] law." Id.
[11] This Court acknowledges that although the Barbara'sSales Court analyzed all interested states under the most significant relationship test, the certified question on interlocutory appeal ultimately constrained that court from selecting a proper forum other than California and Illinois.Barbara's Sales, Inc. v. Intel Corp.,979 N.E.2d 910, 925 (Ill. 2007) ("While either Illinois or Missouri law could possibly apply separately to the named plaintiffs' individual causes of action according to the individual facts, plaintiffs have only sought relief under Illinois law. Further, the certified question presents us with a choice between only Illinois and California. We therefore answer that Illinois law applies here."). As this Court is facing this choice of law issue without the constraint of a certified question, it is able to consider all forums with an interest in the instant matter.